LEONARD W. EDLEMAN

*v.*

BYERS & GILMORE.

1. DEPOSITIONS — *substantial compliance with the statute required.* Every provision of the statute regulating the mode of taking depositions must be substantially complied with.   Where a note, professedly an exhibit referred to in a deposition, was not attached or inclosed with the commission and interrogatories sealed and sent to the clerk, but a part only of the papers were so sent by the commissioner, while the note, interrogatories and commission, and other papers, were sent by him to the party's attorneys:   *Held,* that the deposition should have been suppressed on motion.

2. FRAUD AND CIRCUMVENTION.   On the trial of an issue, whether the execution of a note was procured by fraud and circumvention, it is error for the court, in instructions, to limit the mode necessary to be shown, in order to constitute the defense, as against an assignee of the note, to false representations on the part of those obtaining it, as it is impracticable to specify the modes by which such execution is procured.

3. SAME — *false representation not essential to defense.* It is not indispensable to the defense that the note sued on was procured by fraud and circumvention, that the parties obtaining it should have made some positive affirmations in regard to the character of the instrument. It may be done by acts, as well as representations, whereby the defendant, by some adroit maneuver, process or device, without knowing it, signs a promissory note, or puts his name where one can be written above it. Such a transaction, in substance and essence, is a mere confidence game.

APPEAL from the Circuit Court of Mercer county; the Hon. GEORGE W. PLEASANTS, Judge, presiding.

This was an action of assumpsit, brought by Abraham M. Byers and Ephraim Gilmore, partners, against Leonard W. Edleman, upon a promissory note for $350, purporting to have been given by the defendant, May 15, 1871, to Alex. Bowers, bearing ten per cent interest from date. The note was indorsed without date by Bowers to W. D. Gardner, and by him to the plaintiffs.

The defendant pleaded the general issue, and three special pleas: 1. That the note sued on was not his note. 2. That the payee of the note applied to the defendant to act as his agent in the sale of certain horse hay-forks, known as " Hatheway's self-sustaining, self-adjusting, and self-protecting fork ; " and it was agreed by and between Bowers and defendant, that the latter should make sale of said forks when furnished to him, as he should find opportunity, and that the proceeds of said sales, over and above $11 for each machine and its attachments, should be retained by the defendant as compensation for his services, and that to carry out such agreement, Bowers proposed that a contract should be executed, evidencing the agreement, and that defendant was then and there fraudulently, by the false and fraudulent pretext that the paper offered and shown defendant, and which he was requested to sign, was the contract, induced by Bowers to sign the same, believing it to be the contract, and in ignorance that he was signing a note, if he did sign the note. And so by the fraud, and false and fraudulent pretext of said

Bowers, the defendant was deceived, and fraudulently misled and inveigled into the signing and delivering of said note, etc.

The last plea was in substance the same as the preceding one, except it set out the contract shown and exhibited as the one to which the defendant's signature was desired and procured as the defendant at the time supposed, and that Bowers, after the signing of the same, obtained defendant's signature to what he represented a duplicate of the contract, but which was, in fact, the promissory note sued on, etc.    The defendant verified his first two pleas by his affidavit.

A trial was had, resulting in a verdict and judgment for the plaintiffs, and the defendant brings the record to this court.

Messrs. TALIAFERRO & BROCK, for the appellant.

Messrs. BASSETT & CONNELL, for the appellees.

Mr. JUSTICE McALLISTER delivered the opinion of the Court:

When the testimony for appellant is considered in connection with the written contract, which must be presumed to embrace the whole transaction, within the scope of appellant's intention, there is a clear preponderance in favor of the defense, that the execution of the note sued on was procured by the usual swindling process of patent-right venders, by professing to appoint appellant agent to sell a patent hay-fork, when he had no thought of giving a note.  And there is such preponderance, even including the depositions of appellee's witnesses, giving them such weight as they will rationally bear.  But there was such a material departure from the requirements of the statute in respect to those depositions, that the court should have sustained appellant's motion, before trial, to suppress them.  The note, which was professedly an exhibit referred to in them, was not attached or inclosed with the commission and interrogatories sealed and sent to the clerk; but a part only of the papers was so sent by the commissioner, while the note, interrogatories and commission, and other papers, were sent by him to appellees'

47—75TH ILL.

attorneys. Such a practice, if tolerated, would lead to tampering with the evidence thus sought to be taken, and afford a convenient shield for perjury. Every provision of the statute regulating the mode of taking depositions must be substantially complied with.

The modes by which the execution of an instrument may be obtained, which the law would pronounce by fraud or circumvention, it would be as impracticable to attempt to specify, as to place a limit upon the faculties of the ingeniously wicked of the human race. Hence, we think, the first and third instructions for appellees, wherein the court limits the mode necessary to be shown in order to constitute a defense, against an assignee, to false representations on the part of those obtaining it, were calculated to mislead the jury. The limitation wholly excludes the idea of forgery, by the subsequent writing of a note above a signature to another instrument, and without any statement at all. The case was tried upon the sworn plea denying the execution of the note, as well as upon those of fraud and circumvention in the execution.

At the request of appellees' counsel, the court gave the following instruction : " The jury are instructed that the note in controversy was assigned before it was due, and, if the jury believe from the evidence that the defendant executed the note in controversy, then he cannot set up any defense to the note, except that he was deceived into signing the same by those who took it from him, if it was taken, falsely representing the note to be something other or different from what it really was."

Here the court directs the jury as to a fact; but the more serious objection lies in the subtle ingenuity, in again limiting the mode of committing the fraud to false representations, made by those obtaining it, that the note was something other and different from what it really was. The jury would understand from this, that it was indispensable that the parties obtaining it should have made some positive affirmations in regard to the character of the instrument, when the truth is, as the evidence

tends to show in this case, and the scores of others before us of the same character, no representations by positive affirmations are made.   The patent right vender talks to the farmer only about appointing him agent to sell, about furnishing the article for samples, or to fill orders.   There is not a word said about a note; but papers for the appointment, and, as connected therewith, forms of certain statements as to circumstances, etc., are at hand, and the parties proceed to execute them; but, by some adroit maneuver, not yet explained, in that process, the farmer, without knowing it, signs a promissory note, or puts his name where one can be written above it, but it is usually printed and complete.   There is in none of this any representation by direct, express word.   It is implied; it is by acts, and just as criminal as if made by the most solemn verbal asseverations when wholly false.   For, in these matters the original intent is to swindle the unwary out of their notes by a device for whose successful operation the papers are prepared and agents selected.   It may have something more of a business form on the face; it is connected with the proverbially honest employment of agriculture, but in substance and essence it is a mere confidence game.

The limit placed upon the instruction keeps out of the mind of the jury the very mode and means by which the execution of the note was probably in fact obtained.

The judgment of the court below will be reversed, and the cause remanded.

*Judgment reversed.*