RUST LAND & LUMBER COMPANY *v.* ISOM.

Opinion delivered January 11, 1902.

1. APPEAL FROM JUSTICE OF THE PEACE—DEFECTIVE AFFIDAVIT.—An appeal from a justice of the peace will not be dismissed because the affidavit for appeal was made a short time before rendition of the judgment; Sand. & H. Dig., § 4438, providing that "no such appeal shall be dismissed for want of jurisdiction because of any defect in the affidavit." (Page 102.)

2. INSTRUCTION—WHEN MISLEADING.—In replevin for staves cut from plaintiff's land shown by undisputed evidence to be wild and unoccupied, where defendant proved that he had purchased the right to cut timber from an adjacent landowner, it was error to instruct the jury to find for defendant if his vendor had adversely possessed the land for the statutory period. (Page 103.)

3. TRESPASS—EVIDENCE—INSTRUCTION.—Where, in replevin for staves cut from plaintiff's land, defendant was permitted to introduce a deed of adjoining land to one from whom he bought the timber, the court should have admonished the jury that such deed could only be considered in determining the question whether defendant was guilty of intentional wrong. (Page 103.)

4. REPLEVIN—CONFUSION OF GOODS.—In replevin by plaintiff for property which defendant has so mixed with his own that the property of neither can be distinguished, it is not necessary for plaintiff to show that the property was so mingled with the intention of preventing identification. (Page 104.)

5. CONFUSION OF GOODS—SEPARATION.—Replevin will lie for goods of plaintiff which defendant has innocently mingled with his own, if they are of the same kind, quality and value, and the separation can be made without injury. (Page 105.)

Appeal from Ashley Circuit Court.

ZACHARIAH T. WOOD, Judge.

Reversed.

### STATEMENT BY THE COURT.

The plaintiff, Rust Land & Lumber Company, brought suit to recover staves which it claimed had been made by defendant from timber wrongfully cut from its land. On the trial plaintiff introduced in evidence deeds showing that it had title to the following land, from which it claimed the timber had been wrongfully cut, to-wit: All of section 8 lying west of Lake Grampus, in township 16, range 4 west, containing 153.39 acres. It also introduced a plat (which is inserted on the opposite page) of section 8, township 16 south, range 4 west, shown to be a correct transcript of the United States survey of that section, as shown by the records of that survey.

The defendant claimed to have purchased the timber from one Thornton, and introduced deeds conveying to the ancestor of Thornton the following land in section 8, to-wit: West half of northeast quarter of section 8, containing 80 acres; east fractional part of northwest quarter section 8, containing 27.12 acres; north half of northwest quarter of southeast quarter of section 8, containing 20 acres; and 15 acres to be surveyed off northeast quarter of southwest quarter of section 8, east of Lake Grampus, township 16 south, range 4 west.

Thornton, a witness for defendant, was permitted to testify, over the objection of the plaintiff, that his father, under the deed to him, took possession of the lands described in his deed in 1883, and that his father and his heirs after him had held actual possession of such lands since that time, cultivating a part of them. It was admitted by both parties that all of the lands west of Lake Grampus claimed by plaintiff were wild and unimproved, and W. T. Martin, a surveyor introduced as a witness by plaintiff, testified that Lake Grampus was a meandered stream, and that the lands described in plaintiff's deeds lay west of that lake, while those claimed by Thornton lay east of the lake. The other facts appear in the opinion. There was a verdict and judgment for defendant, from which plaintiff appealed.

*G. W. Norman,* for appellant.

*Robert E. Craig,* for appellee.

NORTH

TP. 16. S R.4 W. ASHLEY CO.

Replevin was not the proper remedy. 44 Ark. 447; 62 Ark. 134; 84 Am. Dec. 763; 44 Am. St. 439, 444.

Riddick, J., (after stating the facts.)   This is an action of replevin brought by the Rust Land & Lumber Company against G. W. Isom to recover 2,200 pipe staves.   The action was commenced before a justice of the peace, who gave judgment in favor of the plaintiff, and the defendant took an appeal to the circuit court.   On the calling of the case in the circuit court, the plaintiff moved the court to dismiss the appeal for the want of a proper affidavit.   The affidavit for appeal made by the defendant is in proper form, and was filed on the same day the justice gave judgment. But the trial before the justice of the peace commenced on the 3d day of June, though the judgment was not rendered until next day.   It seems that the defendant, anticipating an adverse decision, made the affidavit for an appeal on the morning of June the 3d, and left it with his attorney, who filed it after the rendition of the judgment next day.   I am inclined myself to the opinion that this affidavit, being made before the rendition of the verdict and judgment, was premature, and feel doubtful as to its sufficiency, but a majority of the judges are of the opinion that the affidavit, though irregular in having been made before the judgment, was a substantial compliance with the statute requiring the applicant for appeal "to make and file with the justice an affidavit that the appeal is not taken for the purpose of delay, but that justice may be done."   Moreover, our statute regulating appeals from justices of the peace provides for amendments to bonds and affidavits executed for the appeal, "so that," to quote the language of the statute, "no such appeal shall be dismissed for want of jurisdiction because of any defect in the affidavit or obligation for the appeal or order granting the appeal, or any defective entry made or informal judgment rendered" by the justice.   Sand. & H. Dig., § 4438.   This provision evinces an intention of the legislature that appeals from justices of the peace should not be dismissed on narrow and technical grounds, when the applicant for the appeal has endeavored to comply with the statute regulating the manner of taking appeals.   It thus appears that there are substantial reasons in favor of the ruling of the circuit court that the mere fact that an affidavit was made a short time before the judgment appealed from was delivered did not render it nugatory, where it was filed after the judgment, and in other respects conformed to the

requirements of the statute. The contention of appellant on that point is therefore overruled.

On the trial the evidence showed that the defendant, without the consent of the plaintiffs, cut timber upon its land, and converted it into staves. The defendant claimed that he purchased the staves from one Thornton. The circuit judge, at the request of the defendant, instructed the jury that if Thornton and those from whom he claimed title "had held actual, continuous, adverse and uninterrupted possession of the lands from which the timber was cut for more than seven years before the institution of the suit, the verdict should be for the defendant." This instruction, to the giving of which plaintiff saved proper exceptions, was entirely abstract. Thornton did not testify that he had ever held possession of the lands claimed by the plaintiff. On the contrary, the undisputed testimony was that those lands were wild and unoccupied. Thornton did testify that his father took possession of lands described in a deed from Moon to him, but that deed did not purport to convey the land claimed by the plaintiff. The only land in section 8 that such deed purported to convey was east of Lake Grampus, and possession of that land could not affect the title of plaintiff to lands west of the lake, even though Thornton believed that his deed covered that land also. There was, as we see it in the transcript, no evidence whatever to justify the jury in finding that Thornton had title to the land claimed by plaintiff, on which the timber was cut, by statute of limitation or otherwise, and that question should not have been submitted to them for decision. The testimony of Thornton that his father and he had held adverse possession of lands·conveyed by Moon to him was incompetent, for it had no bearing on the question at issue, which was whether the staves were cut from the lands owned by plaintiff west of the lake. Plaintiff did not claim the land conveyed by Moon to Thornton, and there was no question as to the title of those lands involved in the case. The tendency of this evidence of Thornton, and the instruction based on it, above noticed, was to becloud the real matters at issue, and mislead the jury; and we are therefore of the opinion that the evidence should have been rejected, and that the court erred in giving the instruction as to adverse possession.

The only legitimate basis for introducing the deed from Moon to Thornton was not to show title in Thornton to the lands claimed

by the plaintiff, for, as before-stated, that deed did not purport to convey such land, but to show that the defendant had the right to cut timber on the land adjoining those owned by plaintiff, and in connection with the evidence to show that he cut the timber of plaintiff innocently, under an honest misapprehension as to the location of the boundary line between the land of plaintiff and that of Thornton. The jury should have been admonished that the deeds of Thornton were no evidence of title to the land claimed by the plaintiff, and that they could only be considered in determining the question as to whether the defendant was innocent of intentional wrong.

The evidence on the trial showed very clearly that at least a portion of the staves replevied were made by defendants from timber cut by him on plaintiff's land without his consent, and then converted into staves. The evidence tended to show that defendant piled these staves with other staves owned by him, and they were thus so mingled that the particular staves owned by the plaintiff could not be identified. The court instructed the jury on this point that, before they could find for the plaintiff, it must be shown either that it was the owner of all the staves replevied, or, if it owned only a portion of the staves, it must be shown that these staves had been mixed and mingled by defendant with the staves belonging to him, "with the intention of preventing plaintiff from identifying the staves cut from its land."

No doubt, the rule that where one willfully and wrongfully mixes his property with that of another, so that the property of neither can be distinguished, gives to the innocent party the whole of the mixed property, was intended to prevent fraud, and to take away from the evil-disposed the incentive to deprive another of his property by mixing it with his own so that it could not be identified. While the rule was intended to prevent a mixture for that purpose, it is not necessary for the innocent party to prove that the mixture was actually made with that intent, for in most cases that would be difficult to do. For instance, take this case as an illustration. If the defendant knew that the timber which he cut belonged to plaintiff or some other person, and that he had no right to cut it, and yet willfully and wrongfully entered upon this land, cut timber, and converted it into staves, and afterwards mixed these staves with staves belonging to himself, so that the property of neither could be identified or distinguished, it would certainly not

be necessary for the plaintiff to go further, and show that the mixture was made to prevent plaintiff from identifying his staves. We apprehend that in such a case it would be entirely immaterial whether he mixed them for that purpose, or only for the purpose of making a more convenient shipment or sale. In either case the mixture would have been willfully and wrongfully made by defendant, and he should suffer the loss if any be caused by such act. We are therefore of the opinion that the instructions given on this · point placed a greater burden on plaintiff than the law required, and were to that extent erroneous and prejudicial.

Another question presented by the facts of this case, but which does not seem to have been discussed at the trial below, is whether, if the mingling was innocently done, and if the staves mingled were all of the same kind, quality and value, replevin may not be maintained by plaintiff, notwithstanding the particular staves cannot be identified. If the staves are of the same kind, quality and value, and if no advantage would result to either party by getting the identical staves owned by him, even if that were possible, the general rule is that replevin will lie for the number owned by the plaintiff, to be taken out of the mass, especially when the mingling was not brought about by his act. This rule is generally followed by the courts of this country, including, it seems, the supreme court of the United States. *Eldred* v. *Oconto Co.* 33 Wis. 141; *Peterson* v. *Polk,* 67 Miss. 163; *The Idaho,* 93 U. S. 585; Cobbey, Replevin (2d Ed.), §§ 399-404.

We do not understand that this court has ever distinctly decided to the contrary. The case of *Hart* v. *Morton,* 44 Ark. 450, may seem at first glance to be a decision of that question, but an examination of the facts of the case will show that this is not so. The plaintiff in that case purchased cotton from a tenant subject to the lien of the landlord. At the time of his purchase the cotton was in the field unpicked. Later, the landlord, who was the defendant in the case, also purchased the interest of the tenant. There had been no separation of the rent cotton from the other at the time of this purchase. Afterwards the landlord himself weighed out the cotton, to determine the amount of rent and other cotton. But this was not a separation binding on either party, and the cotton was remixed after being weighed. It is very plain, we think, that the claim of the plaintiff in that case was for an undivided interest, and the court, speaking of it as an undivided share, properly held

that replevin would not lie. But the headnote prefixed by the reporter to that case indicates that the court went further, and decided the question under consideration here; but we think the reporter was mistaken in this, and that his headnote is to that extent misleading.

We have many other cases of that kind holding that replevin will not lie by one tenant in common against his co-tenant to recover his undivided share of the common property. The reason that underlies these decisions is that until division has been made neither of the parties owns any particular part of the property, more than the other, and neither has the right to the exclusive possession of any particular portion of it. We have also held that, when cotton has been innocently mixed and baled, replevin will not lie for a part of the bale; and this is clearly correct, for division in kind cannot then be made without injury to the other party. For, if the bale be torn to pieces, the cotton would have to be rebaled at additional expense. *Moseley* v. *Cheatham,* 62 Ark. 134; *Washington* v. *Love,* 34 Ark. 93; *McKinnon* v. *May,* 39 *ib.* 442.

But this case belongs to neither of these classes of cases. The parties here are not tenants in common. The plaintiff owns a certain number of staves, which, without its fault, have been mixed by defendant with other staves of his own. Conceding that this was innocently done, yet, if the staves mingled are of the same kind, quality and value, a majority of us are of the opinion that plaintiff can in this action recover his staves, or an equal number to be taken from the common mass, if the separation can be made without injury. The plaintiff, as we have stated, was not responsible for the mingling, and whether, if it had been, replevin would lie at its instance and for its benefit, we need not determine.

For the errors stated, the judgment is reversed, and the cause is remanded for a new trial.