S. E. LUX JR. MERCANTILE COMPANY v. JONES.

Opinion delivered May 21, 1928.

*J. E. Gregson* and *John W. Nance,* for appellant.

*C. A. Fuller,* for appellee.

SMITH, J. Separate suits were brought by appellees against appellant, which were by consent consolidated and tried before the court, without the intervention of a jury, as a single suit. The trial court made an elaborate finding of fact, which states the issues, and from which we copy as follows:

The S. E. Lux Jr. Mercantile Company operates a mercantile business in Topeka, Kansas, and in that connection buys and sells canned tomatoes in carload lots. On March 30, 1927, the mercantile company purchased 5,000 cases of canned tomatoes from H. H. Wampler, trading as the Fort Smith Canning Company, by a contract in writing, to be delivered when directed, but within ninety days, and paid therefor by an acceptance draft, which was duly accepted on April 9, 1927, and later paid; that, in order to perform his contract with the mercantile company, Wampler commenced negotiations with the plaintiffs about May 1, 1927, for 3,000 cases of tomatoes, the same to be paid for before delivery; that on May 14, 1927, P. F. Schilling, the secretary and treasurer of the mercantile company, went to Fort Smith to ascertain why the Fort Smith Canning Company had not made delivery of the tomatoes, and there learned that the latter company had no tomatoes for shipment. Schilling then visited the plaintiffs to see about tomatoes which Wampler claimed to have bought from plaintiffs for shipment to the mercantile company, and was informed by the plaintiffs that no tomatoes would be sold and delivered to Wampler until payment therefor was first made. The following Sunday Wampler appeared, and gave plaintiffs checks covering the purchase price of the tomatoes, but plaintiffs advised Wampler that the tomatoes could not be shipped until the checks had been paid.

Plaintiffs had been furnished labels which the mercantile company desired placed on the tomatoes, and which had been placed on them, and the tomatoes were

loaded in cars of the Missouri & North Arkansas Railroad Company, but it was agreed that bills of lading would not be taken out until the checks were paid or it was ascertained that they would be paid.

After giving the checks to plaintiffs, Wampler, without the knowledge or consent of the plaintiffs, obtained bills of lading, and ordered the tomatoes shipped. The following day, which was Monday, plaintiffs telephoned the bank on which Wampler's checks were drawn, and were advised by the bank that the checks were worthless. Plaintiffs thereupon went to the railroad station agent and advised him that the tomatoes must not be shipped, and were informed by the agent that the tomatoes had already been shipped and bills of lading issued therefor. A representative of the plaintiffs hurriedly consulted an attorney, who brought separate attachment suits for each of the plaintiffs, and the cars containing the tomatoes were located at Eureka Junction, and the attachments were levied upon them and the cars were reshipped to Berryville, where they had been loaded, and were there unloaded.

Before the cases were called for trial the plaintiffs amended their complaints, and recited in detail the facts above summarized, and alleged that the possession of the tomatoes had been fraudulently obtained from them. They alleged their ownership of the tomatoes, and prayed judgment for the possession thereof. As thus amended the complaint contained two counts, one in attachment and the other in replevin. A demurrer to the first count was filed and sustained upon the ground that the tomatoes at the time of the institution of the suit were in transit in interstate commerce under through bills of lading.

The judgment of the court also found the fact to be that Schilling had attempted to persuade plaintiffs to consent to the shipment of the tomatoes before the issuance of the bills of lading, upon the representation that Wampler would pay, but that plaintiffs had declined to

consent to the shipment until they were first fully paid for their tomatoes. The court expressly found the fact to be that the consignee, the mercantile company, was not an innocent purchaser of the tomatoes.

The testimony fully sustained all the findings of fact herein stated, and, in view of the fact that the mercantile company paid plaintiffs nothing for the tomatoes, but received them in consideration of advances previously made to Wampler, it was not an innocent purchaser of the tomatoes. *Hamilton* v. *Rankin,* 108 Ark. 552, 158 S. W. 496.

The court further found that the bills of lading issued by the railroad company, which were produced at the trial, were returned to it.

Judgment was rendered by the court in favor of the plaintiffs for the possession of the tomatoes, and from this judgment only the mercantile company has appealed.

For the reversal of the judgment of the court below it is earnestly insisted that by attaching the tomatoes the plaintiffs had ratified the sale thereof, and could not later amend their complaint to sue in replevin, although it had been agreed that the title to the tomatoes should not pass until they were fully paid for.

Appellant is correct in its contention that a vendor who has made a conditional sale, by which the title to the property sold is reserved until the purchase price has been fully paid, may waive the reservation of the title and sue for the purchase price, and, when this election has been deliberately made, he cannot thereafter reassert his title. *Baker* v. *Brown Shoe Co.,* 78 Ark. 501, 95 S. W. 808. We are of the opinion, however, that there was no such election in this case, because, before the trial, the plaintiffs amended their complaint and alleged their title to the tomatoes and their right to the possession thereof, and the cause was tried upon that issue. Under the cause tried by the court the plaintiffs did not pray for judgment for the amount of the purchase money.

It was shown that, when the attorney who prepared the original complaints was more fully advised as to the facts, he amended the complaints and prayed for the recovery of the possession of the tomatoes. The demurrer to the original complaint was sustained, and no objection was or is made to that action.

In legal effect the suit in attachment was abated and one in replevin was substituted.

In the case of *Craig* v. *Meriwether,* 84 Ark. 298, 105 S. W. 585, it was said: ˙

"Nor were appellees estopped, on account of having instituted a suit at law against Law and Bunn, to seek a foreclosure in equity. That was not assuming an inconsistent position. They had the right to sue at law on the notes, without waiving their mortgage lien. *Whitmore* v. *Tatum,* 54 Ark. 457, 16 S. W. 198; *Rice* v. *Wilburn,* 31 Ark. 108. It is only where one of two or more inconsistent remedies is pursued that the election to pursue the one is an abandonment of the other. Besides, when appellees instituted the suit at law they did so in ignorance of a material fact concerning the matter, viz., that there had been no appraisement of the land. They were not bound by any election made in ignorance of material facts. *White* v. *Beal & Fletcher Gro. Co.,* 65 Ark. 278, 45 S. W. 1060; *Dudley E. Jones Co.* v. *Daniel,* 67 Ark. 206, 53 S. W. 890."

In the chapter on Sales, in 23 R. C. L., § 211, page 1388, it is said:

"The acceptance of the buyer's check is not regarded as payment, but only as conditional payment, and, if the check is dishonored on due presentation, the seller's right to reclaim the property is not lost. It has been held that the fact that the seller, on the dishonor of a check so given, improvidently sues out an attachment against the buyer, such proceeding, however, being promptly dismissed without the accrual of any benefit to the seller or injury to the buyer, will not constitute such an election of remedies as will preclude him from reclaiming possession."

See also chapter on Election of Remedies, in 20 C. J., § 26, page 35; *Belding* v. *Whittington,* 154 Ark. 561, 243 S. W. 808, 26 A. L. R. 107.

By § 1077, C. & M. Digest, it is provided that "the plaintiff may strike from his complaint any cause of action at any time before the final submission of the case to the jury or to the court, where the trial is by the court."

The portion of the complaint praying judgment for the debt was stricken out before the final submission of the cause, and we think there was no such election to sue for the purchase price as precluded the plaintiffs from praying judgment for the possession of the tomatoes.

It must be remembered that our Code of Civil Procedure, as interpreted by this court, is most liberal in the matter of permitting such amendments of pleadings as are necessary to present the questions in issue for submission on their merits.

It is finally insisted that neither a suit in attachment nor one in replevin would lie, because, at the time of the institution of the suit, the tomatoes were in transit in interstate commerce, under bills of lading covering a through shipment. But it will be remembered that this shipment was unauthorized, and was wrongful. The consignor had no authority to make the shipment, and the consignee had no right to the possession of the goods in transit. The true owners of the tomatoes were entitled to retake them wherever they found them. No right existed on the part of the consignor or the consignee to demand that the wrongful shipment be consummated. The case made by the pleadings as submitted to the court was that of the true owners of property seeking to recover the possession thereof from one who, through the fraud of another, had obtained the possession thereof.

By § 8604, U. S. Compiled Statutes 1916 (vol. 8, title "Interstate and Foreign Commerce," p. 9316), it is provided that: "If goods are delivered to a carrier by the owner, or by a person whose act in conveying the title

to them to a purchaser for value in good faith would bind the owner, and an order bill is issued for them, they cannot thereafter, while in the possession of the carrier, be attached by garnishment or otherwise, or be levied upon under an execution, unless the bill be first surrendered to the carrier or its negotiation enjoined. The carrier shall in no such case be compelled to deliver the actual possession of the goods until the bill is surrendered to him or impounded by the court.''

It is insisted that under this statute the tomatoes were not subject to seizure under either the writ of attachment or the order of delivery. This statute does not apply, however, for the reason that the goods were not delivered to the carrier by the owner nor by a person whose act in conveying the title to them to a purchaser for value in good faith would bind the owner. The consignor was without authority to ship and the consignee was without authority to receive. Neither acted for the owner, and both were without authority to do so.

The judgment of the court below appears to be correct, and it is therefore affirmed.