McCloskey Bros. *v.* Hood Milling Co.

[80 South. 492, Division A.]

1. Principal and Agent. *Evidence of agency.*
   Where in an action for the price of merchandise sold him, defendant claimed that it had been ordered by his son in his name, without his knowledge or authority, and that he had gone out of business, an admission or declaration by the de-

fendant to a witness, that his son was running the business for him at the time of the purchase, was competent evidence, tending to prove the disputed fact of agency, or authority to buy the goods for him.

2. SAME.

In such case, the declaration or admission of the defendant presented a conflict in the testimony as to the material fact of agency, along with the other testimony in the case tending to show the agency, and should have been submitted to the jury for its determination.

3. SAME.

The admission and declarations of a party against his interest are competent evidence tending to establish the ultimate fact in dispute in the case, and such evidence is to be considered by the jury, in connection with the other proofs, in determining the material issue of fact involved.

APPEAL from the circuit court of Harrison county.
HON. J. H. NEVILLE, Judge.

Suit by McCloskey Bros. against the Hood Milling Co. From a judgment for defendant, plaintiff appeals The facts are fully stated in the opinion of the court.

*Rushing & Guice,* for appellant.

The court below should not have given the peremptory instruction. If an instruction directing a verdict was proper, it should have been given to the appellant, rather than appellee. The evidence as to the purchase and delivery of the goods for the purchase price of which suit is brought, was not disputed. When appellant went to trial with appellee on issue joined, two facts were apparent from the pleadings: First, that appellee did business under the name and style of the Hood Milling Company. Second, that the original orders, made a part of the declaration, were proven, as appellee did not comply with section 1974 of the Code of 1906.

But even if appellee had complied with this statute, there is abundant evidence on which the issue could have been decided in favor of appellant by a jury, and with the facts and circumstances shown by this record, we cannot see how any other verdict would be proper.

One Knoblert, who was the credit man of appellant firm, testified that he went to Gulfport and interviewed both J. R. Hood, the owner of the Hood Milling Company and J. E. Hood, who claimed to be the agent for the Hood Milling Company, and that J. R. Hood stated to him that J. E. Hood was running the business for him as his agent. He was asked: "And you mean to tell the jury that this old gentleman here told you that he had J. E. Hood there as agent, running his business?" And he answered: "Yes, sir, that is what he told me."

We submit the evidence was admissible, under the authority of *Myer Neville Hardware Co.* v. *Spann,* 35 So. 177. The appellee denied making this statement to the witness, Knoblert, but it would appear that this was a question of fact to be submitted to a jury.

The appellee did not introduce J. E. Hood as a witness, but testified hmiself, and from his own testimony, it appears that he had knowledge, or with exercise of ordinary care, could have obtained knowledge of all that transpired in the office that was occupied by himself and son. It appears from the testimony that the building in which this business was transacted had a large sign across it, which read: "Hood Milling Company, Dealers in Groceries, Grains and Provisions." That J. E. Hood was the son of J. R. Hood; that J. E. Hood had no commercial rating; that both of them were in the office most every day; that the telephone was in the name of the Hood Milling Company; that the post-office box was in the name of the Hood Milling Company, with three keys, one used by J. R. Hood, another by J. E. Hood, and the other by an other son of J. R. Hood.

To these circumstances, we have a situation in which the appellees, for years, was a merchant with a credit rating with commercial agencies, claiming to have retired from business, without, however, giving notice, as it appears that notice was given after the liability in the instant case was incurred.

With all these facts and circumstances in evidence, we submit that it was error in the court below to direct a verdict for defendant.

*J. L. Taylor,* for appellee.

It is not apparent at all that J. R. Hood did business as the Hood Milling Company, as alleged by counsel for appellant. It is shown by the evidence that he formerly did business but had retired from business altogether. Plaintiff sued on an itemized account. Defendant filed a counter-affidavit denying each and every item, and specifying wherein they were incorrect, as the statute requires. So plaintiff sued on an open account, filed as Exhibit "A." And even in the plea of defendant, it is set out sufficiently if it were a case coming within the purview of the statute 1974 to meet the requirements of the statute.

There is another statute that counsel seems to have overlooked that appears to settle this controversy, and that is the Statute of Frauds. See section 4775 of the Code of 1906. It is manifest that J. E. Hood had no sort of connection with J. R. Hood, and that J. R. Hood never gave him any authority to use the name of Hood Milling Company and that he never authorized the goods to be charged to him, and never promised in writing to pay for the goods, and the conversation had on the night of October 30th, granting every word to have been said by J. R. Hood to have been true, it would not have taken the matter out of the Statute of Frauds and there was therefore nothing for the jury to pass on

at all and the action of the trial court was proper in the matter.

Then again, McCloskey Bros. had never sold any goods before to the Hood Milling Company through the long years that it had been doing business, and now when they get orders signed on a typewriter without any initials, ordering goods to be sent to various and divers persons, none to be shipped to the Hood Milling Company, and when checks were sent in they were sent by J. E. Hood and J. E. Hood, Agent, and yet they say they never had any report on J. E. Hood and never made any investigation of J. E. Hood, with whom they were doing business, and now when the man with whom they were doing business fails to pay them, they seek to make an old man, eighty-four years of age retired from business years before, become the payer of these goods, when he had no more connection with the matter than the man in the moon.

We find that J. R. Hood never had any correspondence at any time with McCloskey Brothers; never ordered any goods from them; they never shipped any goods to him; he never promised to pay them anything for goods shipped to any one else; he had no knowledge of the dealings with his son. Of course, the trial court should have directed a verdict for defendant.

Then again no business was being transacted at the store formerly occupied by Hood Milling Company, no goods were there, and no property, stock, money and choses in action used or acquired in the business and there was no business.

So it appears that there was nothing to submit to the jury to pass on at all, and that the action of the trial court was in all things correct, and that McCloskey Brothers have sued the wrong man.

I submit that the case should be affirmed.

Holden, J., delivered the opinion of the court.

McCloskey Bros., of New Orleans, sued the appellee, Hood Milling Company, of Gulfport, Miss., for a bill of merchandise alleged to have been ordered by, and shipped for, the Hood Milling Company, which seems to have been composed solely of J. R. Hood, operating under the name of the Hood Milling Company. The orders for the goods were signed by Hood Milling Company in the beginning of the transactions, and later were signed Hood Milling Company, by J. E. Hood, agent. It appears that J. E. Hood is the son of J. R. Hood, who had retired from business, and that he used the name of Hood Milling Company, composed solely of J. R. Hood, his father, for the purpose of obtaining credit in purchasing the goods from the appellants, McCloskey Bros, The proof of appellee showed that the goods and merchandise involved were never delivered to the Hood Milling Company, nor were they purchased by the Hood Milling Company, or J. R. Hood, the sole proprietor of the Hood Milling Company; that neither the Hood Milling Company nor J. R. Hood had any knowledge of the purchase or delivery of the merchandise in question. However, J. E. Hood, the son of J. R. Hood, ordered the goods in the name and on the credit of the Hood Milling Company, and was occupying the office of the Hood Milling Company or J. R. Hood.

At the trial in the lower court J. R. Hood, father of J. E. Hood, and who was in fact the Hood Milling Company, testified that his son, J. E. Hood, had no authority whatever to order the goods in the name of the Hood Milling Company; that he, J. R. Hood, or the Hood Milling Company, had no knowledge of any of the transactions with reference to the purchase and delivery of the goods between his son, J. E. Hood, and appellants, McCloskey Bros.; that the signing of Hood Milling

Company's name to the orders for the goods was without authority, and for which the Hood Milling Company, or J. R. Hood, was not responsible; and that he J. R. Hood, had previously retired from business.

The appellants, McCloskey Bros., had introduced their evidence showing the signed orders and delivery of the goods at the instance of the "Hood Milling Company." Appellants also introduced a witness by the name of Knoblert, the credit man of appellants, who testified that he went to Gulfport and interviewed J. R. Hood, the owner of the Hood Milling Company, after the claim became due, and that J. R. Hood stated to him that "J. E. Hood, his son, was there as his agent, running his business." Mr. J. R. Hood emphatically denied that he made any such statement to the witness Knoblert. On the contrary, Mr. Hood testified that he had no such conversation with the witness, and that J. E. Hood, his son, was not his agent, and was not and had not been transacting the business of the Hood Milling Company as his agent when the purchases of the goods in this case were made, and that he had no knowledge whatever of such transactions, and that all such transactions between appellants and his son, J. E. Hood, were without his knowledge or consent or authority.

At the conclusion of the testimony the circuit judge granted a peremptory instruction to the jury to find for the defendant, J. R. Hood, or the Hood Milling Company. Appellants contend that the granting of the peremptory instruction was error, as there was a conflict in the testimony as to whether J. E. Hood, the son, was acting as agent for the Hood Milling Company at the time of the purchase of the merchandise sued for in this case.

We think the admission or declaration made by J. R. Hood, the sole proprietor of the Hood Milling Company, to the witness Knoblert, that his son, J. E. Hood, was

running the Hood Milling Company business as his agent at the time of the purchase of the merchandise, was competent evidence tending to prove the disputed fact of agency, or authority to buy the goods, for the Hood Milling Company.

It is true that Mr. J. R. Hood emphatically denied making any such statement to the witness Knoblert, but nevertheless the contradiction presented a conflict in the testimony as to the material fact of agency, along with the other testimony in the case tending to show the agency, and should have been submitted to the jury for its determination.

The admissions and declarations of a party against his interests are competent evidence tending to establish the ultimate fact in dispute in the case, and such evidence is to be considered by the jury, in connection with the other proof, in determining the material issues of fact involved.

Therefore the court erred in granting the peremptory instruction for the defendant, appellee, because of the conflict in the testimony on the question of fact as to the agency of J. E. Hood, which agency the appellants' witness Knoblert testified was admitted by appellee, J. R. Hood, but which was denied by the appellee, J. R. Hood. 1 R. C. L., section 26, p. 488; *Myer Neville Hardware Co.* v. *Spann*, 35 So. 177.

*Reversed and remanded.*