ALLEN v. T. J. MOSS TIE CO.

(Division B. May 5, 1930. Suggestion of Error Overruled May 19, 1930.)

[128 So. 351. No. 28590.]

Magruder, Walker & Magruder, of Starkville, for appellant.

**Dorroh & Strong**, of Macon, for appellee.

**Ethridge, J.,** delivered the opinion of the court.

Allen sued out a writ of replevin for one thousand sixty-three red oak cross-ties of the value of sixty cents each, making a total value of six hundred forty-seven dollars and eighty cents, against the T. J. Moss Tie Company, and made affidavit before the circuit clerk of the county. The writ was issued and the sheriff executed it and made the return, in which return he recited the taking possession of one thousand sixty-three red oak cross-ties of the value of sixty cents each, a total value of six hundred thirty-seven dollars and eighty cents all of said cross-ties marked on one end with the letter A, all of said red

oak cross-ties found in the possession of T. J. Moss Tie Company, a corporation, the defendant in said cause, and that he had served summons upon the Moss Tie Company by delivering to J. H. Olutz, agent for the defendant, a true copy of said writ.

Thereafter a declaration was filed in the circuit court alleging that the said ties of the value above stated were unjustly and wrongfully detained, etc. The defendant, T. J. Moss Tie Company, filed its plea in the following words: "Now comes T. J. Moss Tie Co., defendant, by its attorneys and defends the wrong and injury, when, etc., and says that it is not guilty of the wrong and injury complained of in said declaration in that it did not take the goods and chattels of the said plaintiff as complained of in the declaration or any or either of them or any part thereof, in manner and form as the plaintiff has above thereof complained of: And of this the defendant puts itself upon the country."

It appears that T. J. Moss Tie Company on the 14th day of July, 1928, made a contract with one J. A. Jurney, which contract reads as follows:
"No. I

"St. Louis, Mo., July 14, 1928.
"Mr. J. A. Jurney, Starkville, Miss.

"Dear Sir:—In consideration of One Dollar ($1.00), paid by you to us, the receipt of which is hereby acknowledged, you and we hereby register an Agreement, whereby you agree to sell us, and we agree to purchase from you, your entire production of cross ties, of such species and grades as we may, by our written Schedules furnished you from time to time, designate we will accept from you.

"All cross ties are to be delivered by you in accordance with the provisions hereinafter set forth, and at Brooksville R. R. Station, on the M. & O. Railroad, in the county of Noxubee in the state of Mississippi.

"Sec. 1. We agree to advance such sums of money as may be needed, to be used by you exclusively in the

purchase of such ties as above set forth, and at such prices as we may designate by our written Schedules furnished you, which Schedules are to set out also the prices you are to pay for such ties; and such monies so advanced shall first be deducted from any amounts due you on settlements from us; and if on such settlements monies are due us from you, you agree to immediately pay us in cash the amount due us. All such advances will be made to you through your signature on checks drawn against the First National Bank of Jackson, state of Tenn.

"Sec. 2. You hereby acknowledge receipt of our check books, which you agree to use exclusively and solely in the payment for such cross ties as above set forth.

"Sec. 3. All cross ties covered by this Agreement are to conform to the printed Specifications of our Company, a copy of which is hereto attached, and all such ties are to be piled in accordance with the provisions for piling as are set forth in said Specifications.

"Sec. 4. We are to notify you by Schedule, in writing, from time to time, the prices we are to pay you for the certain species and grades of ties which we will accept from you, which Schedules are also to set forth the prices you are to pay for ties, and any such Schedule containing any change, either in prices, grades or species, shall be effective on the date such Schedule is received by you. We do not agree that any such Schedule of prices, species and grades, will remain in effect for any definite period of time, excepting that you are to receive such Schedule in advance from us, in writing, of any such changes as we may wish to make in prices, species or grades.

"Sec. 5. This Agreement will automatically expire at any time that your ties have not been counted and graded by our authorized inspector for any period of thirty days; or at any time that you have on hand an inventory which exceeds one thousand dollars in value of such ties as have not been counted and graded, and settlement made by our authorized inspector covering same.

"Sec. 6. This agreement may be cancelled at any time by either of us, by notice in writing by one party to the other. Upon such cancellation all cross ties you may have on hand at the date of such cancellation, and which were produced by you under this Agreement, properly piled and conforming to the Specifications above mentioned, are to be delivered by you to our authorized inspector, who shall count and grade same, and make settlement with you in the manner as set out in Sec. 1 hereof; and you are thereupon to turn over to us any check books, and any other property of ours as may then be in your possession.

"Sec. 7. We will not honor your checks covering timber, labor, hauling, or partially delivered ties, or checks made payable to yourself, or covering anything whatever except cross ties delivered as above, according to the above mentioned Specifications and piled in accordance therewith.

"Sec. 8. You hereby register your understanding that we hereby agree to pay you certain prices for certain species and grades of cross ties, and that your profit or loss will be the difference between your first cost on each lot of ties, and the value we may place on same as determined by our grading, counting and invoicing your ties at such prices as may be in effect from time to time, and that we do not in any wise guarantee to accept your counting or grading; and further, that we do not in any wise guarantee you a commission of any amount per tie.

"Sec. 9. It is distinctly understood between us that you are in no wise acting as our Agent and that you are not hereby authorized by us, in any way whatever, to make any promises of any kind or character, in our name; and that your use of our check book is solely a means of advancing money to you against cross ties as will later be delivered to us by you, and as a convenient method of keeping account of the amount of such advances.

"Sec. 10. With the exception of the Schedules. of prices, species and grades which we may furnish you from time to time, this Agreement registers all understandings between us, and no inspector of our Company, nor any Agent of ours, excepting the President or Vice-President of our Company, has any authority to change the same in any particular whatever.

"This Agreement is written in duplicate, and a space below is provided for your signature of acceptance. When both copies have been signed by you, and one copy thereof delivered to us, this Agreement immediately goes into effect.

"T. J. Moss Tie Co.,

"By E. E. Pershall [Signed]

"Vice-President.

"Accepted:

"J. A. Jurney. [Signed]."

J. A. Jurney had, prior to purchase of the ties involved in this suit, bought ties from the plaintiff T. B. Allen, giving his own personal checks in payment thereof, but about the first of October, 1928, Jurney stated to Allen that he would give him checks of the T. J. Moss Tie Company for the ties purchased by Jurney, and he purchased a number of ties after this conversation and gave Allen checks signed by the T. J. Moss Tie Company, by J. A. Jurney, in payment of such ties. The particular ties involved in this suit were not paid for by such check, and the plaintiff contends that they were never paid for at all, while the T. J. Moss Tie Company contends that it had paid J. A. Jurney for more ties than it had received, including the ties in the controversy. Jurney was examined as a witness and testified that he bought the ties in suit for the T. J. Moss Tie Company, or that it bought them through him, and that he was to give a check for them when they were inspected and taken up, but that the T. J. Moss Tie Company took up its check books furnished him under the contract above set out, and that he did not have any means of paying for them.

There were several checks about which the witnesses were examined, but only two were introduced in evidence and appear in the record before us. The record shows the checks in regular form, and on the same page as part of the check apparently is a listing of the ties and a copy of a written indorsement upon the check. The checks are in substance the same as to form and contents, except the character of ties and the amount of the check. One of the checks was indorsed in writing under the contractual stipulation by T. B. Allen, and the other was indorsed above, or at the other end of the check from this contractual stipulation. There is nothing in the record to show whether this contractual indorsement was contained in a printed form or whether it was written on there by Jurney at the time he gave it to T. B Allen. The only purpose apparently in the examiner's mind with reference to this, is that the check was signed by Jurney, and the printed matter "T. J. Moss Tie Company, By————," was filled in with Jurney's signature. The questions and answers pertinent to that are as follows:

"Q. I show you three more checks of the Moss Tie Company, not attached to the two December checks already introduced here by Mr. Taylor. Those checks are regular printed forms prepared and issued to Mr. Jurney and another man doing the same kind of business he was, by the Moss Tie Company? A. Yes, sir.

"Q. All of those checks are signed in printed letters 'T. J. Moss Tie Company, by ————,' weren't they when they were turned over to Mr. Jurney? A. Yes, sir.

"Q. And all Mr. Jurney had to do was simply insert his name there? A. That's right.

"Q. And your company furnished those checks and other checks like them to Mr. Jurney? A. Yes.

"Q. Do you remember how many checks Mr. Jurney was issued? A. No, sir, I don't know exactly.

"Q. Mr. Taylor suggested two hundred fourteen—that about right? A. Yes, sir."

The check which appears to have been indorsed at the bottom of the contractual stipulation reads as follows:
"Do not detach.

| Length, | timber, | grade, | ties, | price, | amount |
|---------|---------|--------|-------|--------|--------|
| 8— | gum | 5 | 377 | 57 | 214.89 |
| 8— | " | 4 | 165 | 47 | 77.55 |
| 8— | " | 3 | 111 | 30 | 33.30 |
| 8— | " | 2 | 14 | 20 | 2.80 |
| 8— | " | 1 | 55 | 15 | 8.05 |
| 8— | " | R | 105 | 10 | 10.50 |
| 8— | RO | 5 | 112 | 70 | 78.40 |
| 8— | " | 4 | 13 | 60 | 7.80 |
| 8— | " | 3 | 11 | 50 | 5.50 |
| 8— | " | R | 1 | 20 | .20 |

964

"Dated at Brooksville, Miss., on 46-12-15 1928.
"Merchants' & Farmers' Bank
Columbus, Miss.
"To _____
Bank.
"Pay to the order of T. B. Allen $438.99, Four Hundred and thirty-eight and 99/100 . . . Dollars.
"T. J. Moss Tie Company,
By J. A. Jurney.
"No. 46 Listed,
"Endorsed: Know all men by these presents, That I have this day sold, assigned, set-over and delivered to the T. J. Moss Tie Company the material described on reverse side hereof and at and for prices and sums shown, payment of which, in accordance with detail on reverse side hereof, is hereby acknowledged, and I hereby covenant with the said T. J. Moss Tie Company that I am the lawful owner of said ties and that the same are free from any incumbrance whatsoever and that I have the lawful right to sell the same.
"T. B. Allen.
_____
Endorse Here.

"Pay to the order of any Bank, Banker or Trust Co.

"All prior endorsements guaranteed, Bank of Brooks-ville, 25-282 Brooksville, Miss., 25-282 C. H. Hudson, Cashier, Columbus National Bank. Prior endorsements guaranteed, Dec. 18, 1928. Columbus, Miss."

There was a peremptory instruction at the conclusion of the evidence for the defendant. It appears in the testimony that ties had been sold by Mr. Allen to Mr. Jurney, either personally or for the Moss Tie Company from August, 1928, to the 22d of December, 1928; that there was settlement in the early days of December for ties inspected and loaded up to that time; subsequently other ties were placed on the railroad right of way marked A, and these were inspected in January; that the T. J. Moss Tie Company declined to pay for them, claiming that it had paid Jurney. It appears from the evidence that some of these ties last inspected were several months old, and the number was somewhat in dispute. In other words, there was such a conflict in the testimony and such divergencies in the evidence that we think the peremptory instruction must have been granted upon the theory that the contract above set out made Mr. Jurney an independent buyer, and that Mr. Allen was charged with notice of the terms of the contract or of the powers of the agent to buy for the T. J. Moss Tie Company in the transaction, as the contract was in writing and expressly provided in its terms that Jurney was in nowise acting as the agent of the tie company and was not authorized by it in any way whatever to make any promises of any kind and character in its name, and that the use of the check book is solely the means of advancing money to him against cross-ties as will later be delivered to the tie company by Jurney, and as a convenient method of keeping account of the amount of such advances, and other terms in the contract which show that the transaction between the T. J. Moss Tie Company and Jurney was one by which they were merely to advance him money with which to buy ties, and that they were not to

be bound in any respect by his contracts with third persons in reference thereto.

Of course, it is familiar learning that a person dealing with an agent must know at his peril the extent of the agent's authority to bind his principal; but where the principal has placed the agent in a position where he appears with reasonable certainty to be acting for the principal and his acts are within the apparent scope of his authority his acts will bind the principal. The T. J. Moss Tie Company, as stated above, furnished its checks, signed by it in print, with authority of Jurney to fill in the place "by————" with Jurney's name, and the checks were drawn upon funds of the T. J. Moss Tie Company in banks, such funds being there to its credit and such checks being paid in the general course of business by the T. J. Moss Tie Company; and this appears to be authority of Jurney to sign the checks as agent of the tie company.

If the provisions of the stipulation above set out, by which it is recited that the sale is made to the T. J. Moss Tie Company and that the seller had good right to sell the ties, were printed upon the check there could be no question that the contract would be one between Allen and the tie company, but if they were written there by Jurney, we think it would be a question for the jury to say, under all the facts in the record, regardless of the contract between Jurney and the Moss Tie Company, whether the contract was for the Moss Tie Company, and whether Jurney had apparent authority to make it.

We think the principles announced in Myers Construction Co. v. Batson (Miss.), 126 So. 822, are controlling under such case, and that it was error under the facts in this record to grant the peremptory instruction. We think it is a case for the jury under appropriate instructions.

It is urged by the appellant that the appellant should have had a peremptory instruction because of the pleading of the defendant, above set out, in which it is con-

tended the denial is merely as to the taking of the property and not as to the wrongful detention of it, and that the defendant has qualified its plea in limiting its denial to the taking, and that the plea should be taken as confessing the wrongful detention. We do not think this contention is sound. It is well settled in this state that "not guilty" is the only plea to the action of replevin, and any other plea may be stricken out on motion or treated as surplusage or a nullity. Bennett v. Holloway, 55 Miss. 211; Porter Hardware Co. v. Peacock, 129 Miss. 129, 91 So. 856; Munn v. Potter, 111 Miss. 180, 71 So. 315.

For the error indicated, the judgment of the court below will be reversed, and the cause remanded.

Reversed and remanded.

## On Suggestion of Error.

It seems to us that appellee throughout has pitched its arguments as if there had been a verdict on the merits in appellee's favor, whereas there is only a peremptory instruction. Looking to this fact and to the state of the record, it appears that as to the point now most strongly relied on, counsel have failed to consider the doctrine applied in Peterson v. Polk, 67 Miss. at page 168, 6 So. 615, wherein it was said: "The defendant had mingled the staves claimed by plaintiff with others of like character, and it was impossible to separate them. He cannot impose upon the plaintiff the obligation to identify her own under such circumstances." See also 34 Cyc., pp. 1359, 1360, and cases cited under note 55, particularly Rust Land Co. v. Isom, 70 Ark. 99, 66 S. W. 434, 91 Am. St. Rep. 68.

Suggestion of error overruled.