LYNCH *v.* AMERICAN SLICING MACH. CO.

(Division B.   November 10, 1947.)

[32 So. (2d) 546.   No. 36578.]

**C. A. Bratton**, of Oxford, for appellant.

**J. W. T. Faulkner,** of Oxford, for appellee.

**L. A. Smith, Sr., J.**, delivered the opinion of the court.

Appellee sued appellant in the court of a justice of the peace in Lafayette County for the price of a slicing machine allegedly sold and delivered to appellant, a restaurateur, on a written contract, admittedly signed by H. C. Mathis, an employee of appellant, trading as Buffaloe's Cafe. The form of the signature was "Buffaloe's Cafe, by H. C. Mathis."

In the justice of the peace court a jury returned a verdict for appellee, the appellant here then appealed to the circuit court, where another jury found for appellee again, and the appellant has brought the case here. He assigns several errors, all of which may be resolved into the ultimate complaint that the verdict was contrary to the overwhelming weight of the evidence.

The price of the slicing machine, complete, was fixed in the contract at $159, of which a payment of $9 in cash was therein acknowledged, the balance to be paid in monthly installments. The signed instrument also recited: "No verbal agreement can change or modify the conditions of this contract, and the undersigned states that there is no verbal or written understanding or agreement different from or other than the printed conditions of this contract." The authority of Mathis to sign this contract is of paramount importance to decision of the issue in this action.

R. T. Neely, the selling agent of appellee, testified as the only witness for it. He said that "I demonstrated one slicing machine, sold this machine, to Mr. L. G. Lynch, Jr. Order was signed by his manager, at the request of L. G. Lynch." Mr. Neely further testified: "Mr. Lynch asked his manager to sign the order and pay me the down payment out of cash, that he was in a hurry, and had a truck waiting for him, the manager's name was H. C. Mathis."

Appellant contradicted witness Neely categorically, except as to the ownership of Buffaloe's Cafe and the demonstration, and as to the machine being left in his place of business, but did say that he was in a hurry to leave. He was present at the demonstration, but testified that he did not buy the machine, told Neely that he did not want it, and that his negro cook would probably not use it. He did not authorize Mathis, who was only a waiter in his restaurant, to sign the contract. He was never dunned by appellant for deferred payments,—but here it must be borne in mind that there is no way to know from the record when this controversy reached its impasse, so it cannot be determined clearly whether, or how many, if any, deferred payments had become past due. Further, appellant said he was in a hurry, left, and went to Grenada, and that witness Neely promised to pick up the machine later. It was damaged in a fire, which afterwards destroyed appellant's cafe.

Witness Mathis, on behalf of appellant, testified that at the time the contract was signed he was "working in the cafe, cashier, and waiting on the tables as a waiter." He denied that appellant told him to sign the contract. On this point, he claimed the event occurred as follows: "I was working up front. . . . Mr. Lynch had to leave. This salesman came up front and wanted me to sign a paper, and I asked him what it was for, and he said: 'it was to show where the machine was left on a thirty day trial,' and I told him I would sign it. He said he wanted it signed to show where he had left the machine." On cross-examination, he said he "waited in the cafe and kept it going" when the appellant was absent. He acknowledged that he signed the contract, which he could read.

The father of appellant testified that he remembered the slicing machine transaction, and, on the main points, corroborated his son's testimony, saying, however, that the salesman wanted to leave the machine there for thirty

days' trial, and was told by appellant he could leave it there if he so desired. Then his son left, and witness Neely talked to Mathis, wanting him to sign the contract, but Mathis informed him that he, Mathis, lacked authority to do so. But did sign, when told that the paper was intended to be merely a receipt for the machine, to show where it was. He said Neely was paid no money.·

The credibility of none of the witnesses was challenged or impeached. It will be seen that on the part of the appellee, who was plaintiff below, the entire evidence was contained in the oral testimony of Mr. Neely, and the written contract. While, on the part of defendant, he, his father and Mathis testified.

Appellant cites numerous cases in his brief, all correctly expressive of the law, but, in our judgment, some of them are not in point here. He quotes from Great Atlantic & Pacific Tea Co. v. Davis, 177 Miss. 562, 568, 171 So. 550, 551, where this Court held it was the Supreme Court's duty to set aside a jury's verdict, ''(1) Where the verdict is without the support of any competent evidence; (2) where the verdict is without the support of any reasonably believable proof; and (3) where the verdict is against the overwhelming weight of the evidence.'' Appellant plants his plea here on the third ground, supra. Difficulty generally lies in weighing the evidence, and thereby determining whether it is ''overwhelming'' one way or the other. Here, the burden was on the appellee in both the justice of the peace court and the circuit court, but each time separate juries resolved sharply conflicting testimony in favor of the plaintiff, appellee here. Jurors are selected from the body of the county, men of various walks and vocations, with diverse views, backgrounds, and environments, and different personalities. Therefore, to juries the law wisely commits the finding of fact, to be expressed in the verdict. We, in recognition of the wisdom of that policy, have held, over and over again, that we will not ordinarily disturb such verdict based on

conflicting evidence, but will, where it is against the great overwhelming weight of the evidence.

On the question of agency, appellant quotes from Carter v. Taylor et al., 6 Smedes & M. 367, 14 Miss. 367, as follows: "He who seeks to make the principal liable for the act of his agent, must not only prove the agency, but must also prove, if it be a limited agency, that the transaction was within the scope of the power, as on that depends the legal ability of the principal. . . ." To this, appellee replies that conflicting evidence as to agency has been repeatedly held by this Court to be a question for the jury. McCloskey Bros. v. Hood Milling Co., 119 Miss. 92, 80 So. 492; Wise v. Peugh, 140 Miss. 479, 106 So. 81; Allen v. T. J. Moss Tie Company, 157 Miss. 392, 128 So. 351. We recall here that witness Neely testified that appellant asked Mathis to sign for him and pay Neely $9, the down payment. The signed document acknowledged receipt of this amount, thereby making Neely accountable to his employer for it. On the other hand, three witnesses, including appellant, his father, and alleged agent, Mathis, denied these claims unanimously. However, all witnesses agreed that appellant was in a great hurry to get away, and did leave, and the machine remained in his place of business.

In his brief, appellant frankly concedes that "a mere counting of the witnesses will not suffice" to determine whether or not a verdict is against the overwhelming weight of the evidence, but correctly contends that in some cases, it may have a bearing. Mobile & O. R. Co. et al. v. Bennett, 127 Miss. 413, 90 So. 113; Barbee v. Reese, 60 Miss. 906. This issue, we think, is set at rest here by our opinion on the suggestion of error, in the case of Faulkner et al. v. Middleton, 186 Miss. 355, at page 365, 188 So. 565, 190 So. 910. In that case, the winning litigant had two witnesses against twelve for the loser. We said: "The Court has never attempted to prescribe any elaborate formula, adequate to meet all cases, as to when a verdict will be considered against or contrary to the great

or overwhelming weight of the evidence. Obviously it would be as nearly impossible to do so as to attempt to define a reasonable doubt—not to mention other familiar phrases in daily use in the law." There is quoted this language from Teche Lines, Inc. v. Bounds, 182 Miss. 638, 652, 179 So. 747, 751, a verdict will be set aside "when, but only when, clearly or manifestly against all reasonable probability."

In our judgment, we cannot say with confidence that the two juries, which twice decided against appellant on the facts, were manifestly wrong, or that their verdicts were against all reasonable probability. Unless we can say so, "the verdict must stand, for otherwise there would be only a matter of conflict in the evidence, in which case, if the issues have been fairly submitted to the jury on proper instructions, the verdict is irreversible." Faulkner v. Middleton, supra. These quotations are decisive of our course here, where there is no claim that the issues were not fairly submitted on proper instructions.

We have carefully considered this record, the briefs, and the authorities, and have concluded that it is not a case where we can with confidence hold that the verdict of the jury was against the great overwhelming weight of the evidence. Therefore the judgment of the trial court will be affirmed.

Affirmed.