Frank W. Marden et al., copartners as Marden, Orth
& Hastings, Appellants, v. E. F. Southard et al.,
copartners as Tellico Extract Company, Appellees.

Gen. No. 17,422.

PRINCIPAL AND AGENT—*agent must inform principal of contract
with competitor.* Where an agent agrees, in a contract appointing
him an exclusive sales agent, to secure the best price obtainable
for the products of the principal, and does not make known that he
has made agency contracts with competitors, agreeing with one to
give his products a preference in selling and with another that he
will not give preference of advantageous price offers to other like
products, the principal may abrogate and repudiate the contract.

Appeal from the Municipal Court of Chicago; the Hon. STEPHEN
A. FOSTER, Judge, presiding. Heard in the Branch Appellate Court
at the October term, 1911. Affirmed. Opinion filed December 17,
1912.

FASSETT & ANDREWS, for appellants.

S. M. MEEK, for appellees.

MR. PRESIDING JUSTICE CLARK delivered the opinion
of the court.

Suit was brought by the appellants, hereinafter re-
ferred to as plaintiffs, against the appellees, herein-
after referred to as defendants, upon a contract made
by the defendants with the firm of Leonard & Co. and
their successors in business, in and by which Leonard
& Co. were made the sole and exclusive sales agents
for all the tannin products which they might manufac-
ture during the five years beginning May 1, 1904.
Leonard & Co. in November, 1906, transferred their
property, assets and good will, including, as it is
said, their rights under the contract in question, to
the plaintiffs, who were doing business as Marden,
Orth & Hastings.

The declaration alleges that in September, 1905,
there was a breach of the contract, in that the defend-

ants refused to sell their products, manufactured or to be manufactured, to persons with whom Leonard & Co. had previously made contracts, and refused to fill orders which Leonard & Co. had requested them to ship, and that they wholly abrogated and repudiated the contract and refused to be bound thereby.

The case was tried before the court without a jury, and a finding was made in favor of the defendants and judgment entered thereon.   From this judgment the plaintiffs appeal.

The sum to which plaintiffs claim they are entitled is the amount of commissions at the rate specified in the contract between Leonard & Co. and the defendants on all products sold by the defendants from the time the contract was repudiated by the defendants, namely, November 1, 1905, to April 30, 1909.

The second paragraph of the contract in question reads as follows:

"The said second parties hereby agree that they will sell from time to time, as the same may be produced, the entire output of tannin products, which may be manufactured by said first party, and agree to use their best efforts to secure the best price obtainable for said products at all times, and to establish a lasting and valuable custom for same."

The fifth paragraph reads as follows:

"The said first party agrees to turn over to said second parties all direct inquiries for the tannin products of said first party, and all the information which it may receive which might assist in the sale of said products, or which might affect the financial standing of its customers."

By other provisions of the contract it was stipulated that shipments might be made to different stores of Leonard & Co., and that such shipments could be considered as sales and Leonard & Co. allowed 4% commission thereon.   As to other sales Leonard & Co. were to be paid 2% of the net amount received for keeping books of sale, collecting, remitting, etc., and in addition thereto 4% commission.   Leonard & Co. were to guarantee the payment for each shipment of

goods on their order, and agreed that they would remit promptly for all shipments in accordance with the terms of sale in each case, notwithstanding that they, Leonard & Co., might not have received payment from their customers for such shipments.

The contention on behalf of the defendants is that they were justified in refusing to proceed with the contract because at the time the contract was entered into Leonard & Co. had made contracts with other concerns, competitors of the defendants, which contained in them, unknown to the defendants, provisions which made it impossible for Leonard & Co. to carry out the contract with the defendants in good faith. One of these contracts was with the Cherokee Tanning Co. This contract contained a provision which is charged not to have become known to the defendants until about the time of the hearing of the case in the Municipal Court. We think that the record bears out the contention of defendants in this respect. The provision referred to appears in section 2 of the contract between the Cherokee Tanning Co. and Leonard & Co., which reads in part as follows:

"*  *  * that they will endeavor to obtain the best prices at all times, and the said George H. Leonard and Company agree further, that if they should be handling other makes of tannin products, of similar nature and quality, and the market conditions should make it difficult or impossible to dispose of both, or all makes, then in that case, they will give preference in selling or contracting for shipment, to the tannin products of said first party."

It also appeared upon the trial that Leonard & Co. had a contract with the Brevard Tanning Co., the provisions of which were not communicated to the defendants and did not become known to them until the trial of the case; and one with the Alverez Land and Timber Company, both of which it is charged contained provisions that were inconsistent with the provisions of the contract made by Leonard & Co. with the defendants. Section 4 of the Alverez Co. contract reads as follows:

"Said second parties further agree that in selling to the Canadian trade, they will not give preference of advantageous price offers to other makes of like product, and to satisfy said first party that they are carrying out this provision, will submit to it each quarter a list of sales in Canada of other makes of like product."

As clear a statement as we have been able to find of the law which, in our opinion, should be applied to this case, is set forth in Mechem on Agency, section 66, which reads as follows:

"*One cannot be Agent if Duty and Interest conflict.* A person will not be permitted to take upon himself the character of an agent, where on account of his relation to others, or on account of his own personal interest, he would be compelled to assume incompatible and inconsistent duties and obligations. An agent owes to his principal a loyal adherence to his interests, and it would be a fraud upon the principal and would contravene the public policy, to permit an agent, without full knowledge and consent of his principal, to enter into a relation involving such a duty, when his allegiance had already been pledged to one having adverse interests, or when his own personal interests would be antagonistic to those of his principal."

Some of the Illinois cases to which our attention has been called and which seem fully to recognize the rule are Ballance v. Vanuxem, 191 Ill. 319; Leonard v. Springer, 197 Ill. 532; Mexican Amole Soap Co. v. Clarke, 72 Ill. App. 655; Edelman v. Byers & Gilmore, 75 Ill. 367; Allen v. Hart, 72 Ill. 104, and Linington v. Strong, 107 Ill. 295.

We think the evidence justified the trial court in the conclusion that Leonard & Co. at the time they entered into the contract with the defendants did not inform them of the provisions of other contracts which they had made, which provisions, if carried out, would vitally affect defendants' interests. We think the trial court was warranted in finding that there could be no recovery.

The judgment is affirmed.

*Affirmed.*