Ismert-Hincke Milling Co. *v.* Natchez Baking Co.

[86 South. 588, No. 21360.]

1. Principal and Agent. *Agent can bind principal only within agent's powers; duty to ascertain agent's authority stated.*

An agent can only bind his principal when acting within the scope of his powers; and persons dealing with the agent must know his powers and the scope and limit thereof.

2. Evidence. *Principal and agent. Stipulation that no agreements not embodied in order are binding is valid.*

A party has a right to embody a stipulation in a written contract that no agreements not therein contained shall be binding; and a person buying from an agent on written order, subject to the approval of the principal, must see that the writing signed contains all the agreements, where such stipulation is contained in a written order, and verbal agreements of the agent in such case cannot be proven in a suit to enforce the contract.

Appeal from circuit court of Adams county.

Hon. R. E. Jackson, Judge.

Action by the Ismert-Hincke Milling Company against the Natchez Baking Company. Verdict and judgment for

defendant, and plaintiff appeals. Reversed, and judgment rendered for plaintiff.

*Reed, Brandon & Bowman,* for appellant.

This is a case in which only fundamental principals of law are involved and in which it is unnecessary to cite legal authorities. The whole case rests upon the question as to whether or not the contract in this case was the one sent into the main office and there confirmed; and whether or not it was error to permit the introduction by appellee of the duplicate order left with him, which contained representations not placed upon the original order, which went into the main office for confirmation, and whether or not it was error to permit testimony showing that J. H. Kirk, an employee of appellant made certain representations or warranties not contained in the original order. Our contention is that appellant cannot be bound by any representation or warranties not included in the original order submitted to them for confirmation.

We submit that there is only one contract in this case and it is either the original contract introduced in evidence by appellant or it is the duplicate contract introduced in evidence by appellee and we think it needs no arguments as to which of these documents really constitute the contract. If it is the original as sent into the main office for confirmation, then it must prevail, and the duplicate order held by appellee with the words "old wheat" inserted and which was unconfirmed by the main office has no place in this case and should not have been admitted in evidence.

This duplicate order retained by appellee was nothing more than a memorandum showing that he had placed an order for a car of flour from appellant. It was not a contract until approved by the main office of appellant. If either he or the salesman saw fit to make some additions to this memorandum, or duplicate order, and omit the same from the original document which had to go into

the main office for acceptance, that was something for
which appellant cannot be held responsible. It was with-
in the full knowledge of appellee that his order was not
to become a contract until approved, and it was also with-
in his knowledge and that this original order did not con-
tain the words "old wheat," because he looked up the sales-
man after its execution and had the words "old wheat"
inserted in the duplicate order. If he had a right to do
this, why didn't he have the right to change the price in
the duplicate order to one-half of what it was in the origi-
nal and by the same process of reasoning hold appellant
to the price as changed. This was the very thing appellant
was guarding against by making it mandatory that the
order was signed by and approved by the main office before
it became a contract. Such a plan was a fair one to ap-
pellant and a safe one to appellee.

Our contention is that the duplicate order amounted
to nothing and should be ignored, and that the only bind-
ing obligation resting upon appellant was contained in
the contract which went in for their confirmation, and hav-
ing fulfilled that contract, they are entitled to recover the
amount due thereunder.

*Ratliff & Kennedy,* for appellee.

The evidence shows conclusively that the salesman,
Kirk, wrote "old wheat" on the duplicate original, which
was left with the baking company. It strikes us as being
too plain a proposition for argument that the baking com-
pany was entitled to old wheat flour both because the sale
to it was of old wheat flour, the order held by it specified
old wheat flour, and the price paid by it was the price of
old wheat flour.

But the appellant contends that the order was subject
to confirmation and the only order, or contract between
the parties, was that one which was confirmed by the mill-
ing company. The milling company confirmed the order
by letter and did not purport to set out all the terms of

the purchase. Mr. Simon, for the baking company, took no steps to see that the salesman, Kirk, sent into the milling company a correct order.

We submit to the court that Mr. Simon of the baking company took every precaution that any reasonably prudent business man would have taken; he called on the salesman within a very short time after the order was signed, called his attention to the error in the order and had it corrected. It cannot be said that it was the duty of Mr. Simon to see that the proper order went in to the milling company from the salesman for the reason that the salesman is the agent to the milling company, and is sent around to see the trade for the purpose of transacting business for the milling company, and to take orders for the milling company. Counsel for appellant contends that the purchaser should see to it that the order as per the duplicate original left with him was transmitted to the milling company, and to hold to the contrary would open up endless grounds for fraud. Counsel says that the salesman and the purchaser could enter into certain agreements and put certain things on the order left with the buyer, and leave them off of the order sent into the house, and, thereby defraud the wholesale milling company. We submit to the court that if such a fraud should be perpetrated it would be thru the instrumentality of the salesman, who is the agent of the milling company, and that the milling company should sustain the loss, if any. However, no such fraud, or misrepresentation, is shown in the case at bar, but on the contrary it is shown that the buyer bought old wheat flour and agreed to pay the market price for old wheat flour, and the milling company is now trying to get two dollars per barrel in excess of the market price for their new wheat flour and thereby profit from the neglect of their own agent.

Upon the question of fraud let us see what the rule contended for by appellant would lead to. Appellant contends that it is the law that the order which the salesman forwards to the house, and not the one which leaves with

the buyer should control.  Suppose that the salesman, Kirk, in the case at bar had placed upon his original order after it had been signed by Simon and just before he mailed it in to the milling company, an extra item of two hundred and ten barrels of flour, or any other item which he might choose to place thereon.  Could it be the law that the buyer, Simon, would be forced to take the four hundred twenty barrels of flour when he had not bought it, nor signed an order for it, but merely because the salesman had sent the house such an order?  It would certainly be to the interest of a salesman for the milling company and. also to the interest of the milling company to secure the largest orders possible, and with such a law as contended for by appellant, either the salesman, or the wholesaler could put additional items on the order and then claim that it was the duty of the buyer to see that the proper items should come in.  Such is not the law for the reason that it is neither reasonable nor practicable, and in addition thereto would open up the door of fraud whereby traveling salesmen could absolutely bankrupt the reliable buyers of the country.  If the law will not permit the buyer to place any confidence in and rely upon the orders given to a traveling salesman, then would not the law in turn hold that the buyer is not bound by a contract entered into with a traveling salesman?  If the traveling salesman is guilty of neglect, or wrong doing, either by omission or commission in the taking of an order upon whom should the consequent loss if any, fall?  We believe that the law answers that it should fall upon the principal who has selected him as his agent.  If Mr. Simon did not have a right to rely upon the expressed and written stipulation that the flour was to be of old wheat, what right has the milling company to rely upon the price of twelve dollars and eighty-five cents per barrel which was made by that same agent?  It will be noted that the salesman Kirk, was not called in this case.  It will also be noted that this same salesman sold R. Viener & Company a carload of old wheat flour at old wheat flour prices, but in writing up

the order he again omitted to specify on the order "old wheat." Mr. Viener did not detect the omission for some time and because the traveling salesman was a classmate of his son's, he took his loss of two dollars per barrel and said nothing. Again we submit that the evidence in the case shows that old wheat flour was sold, the price named in the contract was for old wheat flour, and the signed order left with Mr. Simon, also called for old wheat flour, and to permit the appellant to repudiate its salesman, its salesman's contract, and to recover for new wheat flour two dollars per barrel more than it was worth on the market, would be contrary to reason and right, and therefore, contrary to law.

ETHRIDGE, J., delivered the opinion of the court.

The appellant, through its traveling salesman, sold to the appellee two hundred and ten barrels of flour, to be contained in two hundred ninety-four jute one hundred forty-pound sacks, at twelve dollars and eighty-five cents per barrel, less the freight, amounting to eighty-two dollars and ninety-one cents; the salesman taking a written order which reads as follows:

"Memorandum of Contract in Duplicate.
"No. 1.                                    August 3, 1917.
"The Ismert-Hincke Milling Company, of Kansas City, U. S. A., sell, and Natchez Baking Company, of Natchez, Miss., by, the following articles upon the terms, conditions, and warranties stated below and on the back hereof, and upon no other:

"Time of shipping, thirty days.

"F. o. b., Natchez, Miss.

"Terms: Sight, or sight on arrival; draft with bill of lading attached, through same Bank of Natchez, Miss.
"Amount

| "Bbls. | Brand | Package | Price. |
|--------|-------|---------|--------|
| 210 | Thunderbolt | 140 Jutes | $12.85 |

### OK BOV

"This order is subject to confirmation by the seller at their main office.

"NATCHEZ BAKING Co., Buyer,
            "By SIMON.
    "ISMERT-HINCKE MLG. Co., Seller,
            "By J. M. KIRK.

"Conditions Governing the Within Sale and Part of Contract Therefor.

"No. 1.  Unless otherwise specified, time of shipment to be within sixty (60) days from date of contract.  Goods not ordered out within sixty (60) days from date of contract, or within contract shipment period, are, without notice to the buyer, subject to the following carrying charges:  Flour:  Five (5) cents per barrel for every thirty days, or fractional part thereof.  Feed:  Twenty-five (25) cents per ton for every thirty (30) days, or fractional part thereof.

"Such carrying charges become due and payable at the beginning of each thirty (30) day period after the termination of the time of contract shipment, the buyer hereby agreeing to pay the same, and shall continue until contract is terminated by ten days' notice of such termination mailed to purchaser.

"No. 2.  Failure on the part of the buyer to order out purchase before expiration of extended contract period gives the seller the right to cancel the contract, or unshipped portion of same, and to collect from buyer, on unshipped portion, the difference between the contract price and the market value of the same at date of termination, together with all accrued carrying and all selling charges.

"No. 3.  The seller, under the terms of this contract, shall have no less than fourteen (14) days from receipt of shipping instructions to satisfy same and make shipments.  Failure on the part of the seller to complete shipments within primary contract time, or within fourteen (14) days from receipt of shipping instructions (unless prevented by conditions beyond his control), shall en-

title the buyer (a) to cancel such specified portion, and collect from the seller the difference in value of such portion between date of purchase and date of cancellation; or (b) to continue the life of said contract at credit of five (5) cents per barrel of flour, and twenty-five (25) cents per ton for feed for each thirty (30) day period or fractional part thereof, beyond the limit of primary contract shipment, or said fourteen (14) day period, it being agreed that, unless notice to the contrary is served on the seller, clause (b) of this paragraph will govern, if shipments are not made within limits as provided above.

"No. 4. No verbal condition, modifications, or warranties can alter this contract.

"No. 5. Seller is not responsible for delays in transit."

This order was sent to the milling company by its salesman, and was accepted as sent; the acceptance containing the same conditions as the contract. When the shipment arrived, the appellee refused to pay the full purchase price, and the matter was taken up between the buyer and the seller, and it was finally agreed that the buyer would pay the draft which accompanied the shipment, with the exception of three hundred and fifteen dollars, and that this would not prejudice the right of the appellant to recover that amount if it should be determined that the buyer was liable for the amount. The buyer contends that there was an understanding between the buyer and the salesman that the flour so ordered was to be made from old wheat instead of new wheat, and that the difference between the price of flour made from old wheat and that made from new wheat amounted to three hundred and fifteen dollars, for which this suit is brought.

It appears from the appellee's testimony that after the order was given and signed the salesman left a duplicate of the order with the appellee, and on inspecting this duplicate the appellee observed that it did not contain the words "old wheat," to indicate that the flour was to be made from old wheat. Upon discovering this the appellee sought the salesman, who was in the city and got him to indorse

upon the duplicate the words "old wheat;" but the order sent to the appellant by the salesman did not contain these words, nor was the milling company notified of any understanding prior to the acceptance of the order and the shipment and arrival of the flour at Natchez. There was a verdict and judgment for the defendant from which this appeal was prosecuted.

The appellant contends that under the terms of the contract the salesman had no power to make a contract nor to agree to modifications of a contract, but his sole power was to solicit orders and send to his principal for acceptance, and that the contract accepted by the appellant is the sole contract, and that under this contract the appellant is entitled to recover; while the appellee contends that there was no stipulation in the contract as to the kind of wheat from which the flour was to be made, and that the real agreement between the buyer and the soliciting salesman may be proved by oral evidence.

It is well settled law that an agent can only bind his principal when acting within the scope of his powers, and a person dealing with the agent must know the extent of the agent's powers to bind his principal. It is also well settled that a party has a right to contract, by providing in the contract that agreements not indorsed thereon are not binding on the principal. It was the duty of the buyer to see that the contract contained all of the agreements before signing and delivering the same, and that he cannot vary his written contract by oral evidence where the contract is specific and certain. The contract in question distinctly notified the buyer that verbal agreements would not be recognized, and if he desired to have the contract contain the words "old wheat," he should have notified the seller before acceptance and shipment. It is difficult to see how commerce under present conditions could be carried on under any other rule.

It follows that the judgment of the court below should

be reversed, and judgment rendered here for the appellant.

Reversed, and judgment here for appellant.

                                                *Reversed.*