CONSUMERS CREDIT CORPORATION OF MISSISSIPPI *v.* SWILLEY

No. 42225          March 19, 1962          138 So. 2d 885

*Satterfield, Shell, Williams & Buford, Patrick H. Scanlon,* Jackson, for appellant.

*Cox, Dunn & Clark,* Jackson, for appellee.

Rodgers, J.

This case originated in the Circuit Court of the First Judicial District of Hinds County, Mississippi, and from

a judgment in favor of the defendant the plaintiff appealed to this Court.

The suit is brought for a balance of $4,366.79 alleged to be due to Consumers Credit Corporation of Mississippi by J. J. Jones and his wife, Mrs. Alyce Rea Jones, and against Mrs. Fern F. Swilley on her letter of guaranty to the appellant Consumers Credit Corporation. The alleged indebtedness came about under the following facts and circumstances:

Mr. J. J. Jones and his wife Alyce Rea Jones organized a corporation known as the Jones Finance Corporation and entered into the small loan brokerage business for several months. They obtained credit from Consumers Credit Corporation of Louisiana. After a few months, it was discovered that Mr. Jones' account was in arrears.

It appears from the testimony in this case that at the time that the Jones Finance Corporation ceased its operation it was indebted to the Consumers Credit Corporation of Louisiana for unpaid notes due by Jones Finance Corporation in the sum of $6,098.40.

A new corporation was organized on July 17, 1958, by Mrs. Fern F. Swilley, known as the Central Finance Company for the purpose of engaging in a small loan brokerage in the city of Jackson, Mississippi, and Mr. J. J. Jones became the president of this corporation. However, Mrs. Swilley owned all of the 750 shares, except 10.

The Consumers Credit Corporation of Louisiana organized a Mississippi corporation under the new Mississippi Small Loan Law and transferred to the Mississippi corporation the business of the Jones Finance Corporation. The Central Finance Corporation entered into a contract with the Consumers Credit Corporation of Mississippi and gave to the Consumers Credit Corporation of Mississippi a letter of guaranty signed by

Mr. J. J. Jones and Mrs. Fern F. Swilley. This letter of guaranty is in the following words:

"July 29, 1958.

Consumers Credit Corporation of Mississippi,
R. F. D.,
Poplarville, Mississippi.

Gentlemen:

"In as much as you are handling notes and accounts of Central Finance Company, Inc., of 343 North Farish Street, Jackson, Mississippi:

"Please be advised that we, the undersigned, do hereby fully, completely and entirely warrant and guarantee, without reservation, any and all notes or other similar evidences of indebtedness which may be discounted to you, sold to you, or which otherwise may come into your possession from Central Finance Company.

"This warranty is to be construed as fully and completely as though we had, each of us and both of us, personally endorsed each and every instrument.

Very Cordially,

/s/ J. J. Jones
/s/ Fern F. Swilley".

The Central Finance Company was organized under date of July 17, 1958, and thereafter on July 29, the Central Finance Company and Consumers Credit Corporation of Mississippi entered into a finance contract, and on November 11, 1958, the note here sued on was signed by Mr. J. J. Jones and his wife. On the back of this note is stamped "Payment of this note guaranteed. Central Finance Company, Inc., by", and was signed by J. J. Jones.

It appears from the testimony that the note given by J. J. Jones and wife to Consumers Credit Corpora-

tion of Mississippi, was accompanied by a trust deed dated November 11, 1958, also signed by J. J. Jones and Mrs. Alyce Rea Jones but made payable to the Central Finance Company, Inc., rather than to the Consumers Credit Corporation of Mississippi. The testimony shows that Mr. Raymond Morris, who is the auditor of the Southern Life Insurance Company, came to Mr. Jones and got him to give him the note, and that Mr. Jones took the trust deed to him the next day, after obtaining his wife's signature on the trust deed. There was no consideration paid to Mr. Jones, nor to Central Finance Company, Inc., for the execution of the note and trust deed, in fact, Mr. Hal J. Hendrick, the president of Consumers Credit Corporation of Mississippi, testified: "In order to clear up the old Jones sore, it was agreed that they would have this note made, backed up with all the security and the guarantee of Central Finance Company, in order to get that headache out of the way and let us get on with the new business at hand". The witness did not indicate that Mrs. Swilley was included in the phrase "they would have this note made". There was a three way contract between the Consumers Credit Corporation of Louisiana, The Southern Life and Surety Insurance Company and Jones Finance Corporation, in which the Southern Life and Surety Company had guaranteed the Consumers Credit Corporation of Louisiana against default arising out of its contract with Jones Finance Corporation. During the time the Jones Finance Corporation was in operation it had a large number of notes in the hands of the Consumers Credit Corporation. These notes had been retained by the corporation as extra collateral, and were not returned to Mr. Jones at the time he signed the note here sued upon.

The record further shows that no collection was made on the insurance policy because of the alleged default of J. J. Jones, although there was a reserve held by

the insurance company on the notes of Jones Finance Corporation.

The defendant Mrs. Swilley propounded interrogatories to the plaintiff Consumers Credit Corporation of Mississippi, in which she asked: "Q. State the amount of the loss covered by Policy No. 1025, that is the maximum amount payable thereunder (10 percent of the amount of the loan or installment transaction business conducted by the obligor with the policyholder during such 12 months period)." The plaintiff filed the following answer to the interrogatory: "A. No. 11, The amount of loss covered by policy No. 1025 is $2,011.39."

Defendant then amended her answer to ask that she be given credit on the note in the alternative for the sum charged to be due to Consumers Credit Corporation of Louisiana from the Southern Life and Surety Insurance Company and readily available to it on demand, in the sum of $2,111.38.

The circuit judge heard the testimony in this case and decided that the note here sued on was not such a note as was contemplated by the written guaranty signed by Mrs. Fern F. Swilley.

The testimony in this case shows that when the audit of the Central Finance Company was made in 1958 the independent auditor asked Consumers for a verification of the outstanding balance on November 28, 1958, which was just 17 days after the date of the note. The third secretary and treasurer wrote that "the outstanding balance for Central Finance Company of Jackson, Mississippi, as of November 28, 1958, is $17,861.63." This balance did not include any part of the amount of the note in the suit.

The questions to be determined here are: (1) Did the agent Jones have authority to bind Mrs. Fern F. Swilley on his personal note; (2) did the letter of guaranty and the Broker's Contract extend to the personal note of Jones, and beyond the obligation to guarantee

loans in the normal course of business; (3) was there any consideration for the note sued on so as to bind Mrs. Swilley; and (4) is defendant entitled to credit for the money said to be due plaintiff by the Southern Life and Surety Company?

The contract of guaranty in this case is based upon the letter dated July 29, 1958, above set out, which predicates its action upon the phrase "in as much as you are handling notes and accounts of Central Finance Company, Inc." The appellant knew that the note taken from J. J. Jones was not a note of Central Finance Company, nor was the note on their "account", but rather it was an effort on the part of the appellant to get a new note, as shown by the following testimony: "In order to clean up the old Jones sore, it was agreed that they would have this note made". The letter of guaranty stated that Mrs. Swilley would warrant "all notes or other similar evidences of indebtedness which may be discounted to you, sold to you, or which otherwise may come into your possession from Central Finance Company." This note was not discounted to Consumers Credit Corporation, nor was it sold to them, but does the expression "or which otherwise may come into your possession from Central Finance Company" bind Mrs. Swilley on the note of her agent for his personal debt?

We have reached the conclusion that Mrs. Swilley is not liable on her letter of guaranty to Consumers Credit Corporation of Mississippi for the following reasons:

As a general rule an agent can not act adversely to the interest of his principal. The text writer in 2 Am. Jur., Agency, Sec. 98 page 80, points this out in the following language: "Every agency is subject to the legal limitation that it cannot be used for the benefit of the agent himself, or of any person other than the principal, in the absence of an agreement that

it may be so used. This is a rule of law of which all persons must take notice. Whenever it appears that the interests of an agent and those of his principal are necessarily in opposition in a particular transaction, strangers dealing with the agent are charged with notice of his want of authority to bind the principal by his acts. In perverting his powers to his own personal ends and purposes, an agent acts in excess of his authority, and persons who knowingly participate in such act of perversion, as by purchasing the principal's property with knowledge that the agent intends to convert the proceeds to his own use, are not protected by the authority conferred on the agent.''

We are also told in the same text, Sec. 153, page 123: ''This is, in substance, the rule adopted by the American Law Institute, which is to the effect that unless otherwise agreed, an agent is not authorized to borrow upon the principal's credit unless such borrowing is usually incident to the performance of acts which he is authorized to perform for the principal. If there is no necessity for an agent to borrow money to effect any purpose of the agency, it will not be presumed, without evidence, that it is proper or usual, in the ordinary course of the business, for him to do so.''

It will also be noted that in the same text, at page 140, Sec. 176, the text writer points out that: ''Express authority to execute or indorse commercial paper in the principal's name will, in the absence of anything indicating a different intention, be construed as confining the authority of the cases to the execution and indorsement of such paper in the transaction of the principal's business and for the benefit of the principal. Such authority does not include authority to draw or indorse negotiable paper for the benefit or accommodation of any other person; authority to sign accommodation paper or as security for a third person must be specially given. Nor does express authority of the nature in

question allow the agent to make or indorse negotiable paper for his own use and behalf.''

In the case of Wagner Trading Co. v. Battery Park National Bank, 228 N. Y. 37, 126 N. E. 347, 9 A. L. R. 340, where the president of the corporation was authorized to sign checks, but the checks were to be countersigned by another, and the president indorsed checks made payable to the corporation and deposited them in the bank to his personal account, the court said: ''When it (the bank) accepted the checks payable to the plaintiff and indorsed by Wagner as president of the plaintiff for deposit to the account of Wagner himself, it did so at its peril to ascertain whether Wagner had authority to indorse them and by his indorsement transfer the money to be paid thereon to his personal account. * * * Assuming, as we do, that Wagner had general authority to indorse checks for the plaintiff's corporate purposes, clearly this does not authorize him to indorse checks to his own order and appropriate the money to his own personal use, and the nature of this transaction was such as to warn defendant that the checks were being diverted from usual business channels.''

In the case of Dorrah v. Hill, 73 Miss. 787, 19 So. 961, where one Patty was acting as agent for Mrs. Jeffries, and he transferred to her account a note due to him which had long since been due on land sold by him, and the court said on this point: ''The fact is apparent that, in making the loan to Hill, Patty, the agent, was acting in a matter in which his interests were adverse to those of Mrs. Jefferies. He had sold the land to Hill years before, and no part of the purchase price had been paid. It is not unreasonable to assume that it was not, to him, a desirable investment of his own funds, and that he took advantage of the opportunity, afforded by the circumstance of having Mrs. Jefferies' money in his hands, to transfer his claim against a slow debtor to his principal. Whether this be true, however,

is immaterial, for Mrs. Jeffries was entitled to the exercise of his judgment, uninfluenced by his personal interests, in making loans of her money, and this she did not have. * * *. Dealing thus surreptitiously with the agent was a fraud upon the principal, and Hill, equally with Patty was subject to the right of the principal to repudiate the contract upon receiving knowledge of its character."

In the case of Wildberger v. Hartford Fire Ins. Co., 72 Miss. 338, 17 So. 282, the Court said: "We are clearly of opinion that an insurance agent, who has been appointed receiver of property, cannot, of his own motion, without the consent of his principal, issue as such agent, to himself as such receiver, a policy of insurance valid against such principal, because the duties of the two positions are inconsistent, and he does have a direct personal interest to the extent at least of his commissions. 'A contrivance', it has been pithily put, 'which reduces the two parties to one, and admits an agent representing antagonistic interests to make a bargain by himself, is so far against the policy of the law that the contract is held to be void, unless the principal chooses afterwards, and with a knowledge of all the circumstances that affect his position, to ratify the act of his agent'."

This Court said in the case of White v. Lee, 97 Miss. 493, 52 So. 206,: "The principal cannot be made liable for the act of the agent as regards third persons, unless the act of the agent is within the ordinary and usual scope of the actual or apparent authority of the agent." See also Odd Fellows' Benefit Ass'n. v. Smith, 101 Miss. 332, 58 So. 100; Ismert-Hincke Milling Co. v. Natchez Baking Co., 124 Miss. 205, 86 So. 588.

An agent can not assume two distinct and opposite characters in a transaction in one of which he acts for himself, and in the other pretends to act for his principal; nor will an agent be permitted to pervert

his authority to his own use. Strong v. Strong, 134 N. J. Eq. 513, 36 A. 410; Porter v. Woodruff, 36 N. J. Eq. 174.

It is the duty of persons dealing with an agent to inquire into his authority, and if an agent has no authority a principal is not bound by his agreements unless the principal either ratifies them, or acts with reference to the agent's agreements so as to constitute a waiver or an estoppel. Aetna Ins. Co. v. Singleton, 174 Miss. 556, 164 So. 13.

The appellant, Consumers Credit Corporation, knew, through its president, that the note given by J. J. Jones, on which this suit was brought, was a note for the account of J. J. Jones, and not a note taken in due course of the business for Central Finance Company, and it was therefore the duty of the Consumers Credit Corporation to inquire of Mrs. Fern F. Swilley whether or not J. J. Jones had any authority to bind Mrs. Swilley upon her letter guaranteeing the notes of the Central Finance Company, by stamping the indorsement of the Central Finance Company upon the back of the personal note for a past due debt of J. J. Jones. We are of the opinion, and so hold, that the letter of guaranty signed by Mrs. Swilley to the Consumers Credit Corporation was not intended to, and did not, cover the note of J. J. Jones given to Consumers Credit Corporation of Mississippi.

It is also apparent from the testimony in this case that there was no consideration going to the Central Finance Company because of the indorsement stamped on the personal note of J. J. Jones. This Court held, in the case of Godchaux Sugars, Inc. v. Fink, et ux, 188 Miss. 531, 195 So. 318, in a case where two officials of an insolvent corporation gave their individual note to a corporate creditor, that the note was unenforceable for lack of consideration, as follows: "A promise is not

binding on the promisor unless an agreed price has been paid for or bargained for in exchange for the promise. Vol. 1, Sec. 75, Restatement of Contracts; Williston on Contracts, 1938 Ed., Sec. 100; Smith v. Cauthen, 98 Miss. 746, 54 So. 844; Owen Tie Co. v. Bank of Woodland, 136 Miss. 114, 101 So. 292; Bancroft v. Martin, 144 Miss. 384, 109 So. 859, 111 So. 434.''

The Court pointed out in the case of Ketcham v. Miss. Outdoor Displays, Inc., et al, 203 Miss. 52, 33 So. 2d 300, that neither a corporation nor its acting officials could be held liable upon a corporate indorsement of a note without consideration for the accommodation of an employee. The Central Finance Company could not, therefore, be held liable for the accommodation indorsement of the personal note of J. J. Jones without consideration. Moreover, the phrase ''or which otherwise may come into your possession from Central Finance Company'', set out in the letter of guaranty, not only requires that the note be ''from the Central Finance Company'', but requires that it be a note for which the Central Finance Company is liable. Therefore, since the Central Finance Company is not liable because of the indorsement placed upon the back of the personal note of J. J. Jones, Mrs. Swilley can not be held liable on her letter of guaranty in which she guaranteed the notes of Central Finance Company.

The judgment of the trial court dismissing the suit is therefore affirmed.

Affirmed.

*Kyle, Gillespie, McElroy* and *Jones, JJ.*, concur.