GENERAL REFRIGERATION AND PLUMBING COMPANY, Plaintiff-Appellant, *v.* GOODWILL INDUSTRIES OF ST. LOUIS, MISSOURI, *et al.*, Defendants-Appellees.

(No. 74-397;

Fifth District—August 4, 1975.

Kenney, Leritz & Reinert, of St. Louis (David M. Duree, of counsel), for appellant.

Burroughs, Simpson & Wilson, of Edwardsville, and Arthur L. Greenwood, of Wood River, for appellees.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

Plaintiff, General Refrigeration and Plumbing Company, brought an action to recover the value of services rendered and materials supplied in the amount of $634.59. Judgment was rendered in favor of plaintiff with respect to defendant Seidel Company, Inc., and against plaintiff with respect to Goodwill Industries of St. Louis, Missouri, and Marjorie

Wannacott. Plaintiff appeals from the judgment only with respect to Goodwill Industries.

In the spring of 1973 Seidel Company owned a building located in Alton, Illinois, which it had leased to Goodwill Industries. Goodwill Industries used the building for operation of a branch store which at that time was managed by Mrs. Wonnacott. As a result of flood conditions along the Mississippi River, flood waters entered the building and caused damage to the heating equipment. In order to have the equipment repaired Mrs. Wonnacott telephoned General Refrigeration, which had done maintenance or repair work previously in the Alton Goodwill store at the request of Mrs. Wonnacott.

After examining the damage and determining that major repairs were required, a representative of General Refrigeration advised Mrs. Wonnacott that she should contact the St. Louis office of Goodwill Industries for permission to proceed with the repairs. Shortly thereafter Mrs. Wonnacott again contacted General Refrigeration and stated that they should undertake the repairs as she had the necessary authority. General Refrigeration then completed the repairs and submitted its invoices to the Alton Goodwill store in the amount of $634.59.

A few days after General Refrigeration had completed the repairs flood waters again entered the building, apparently causing damage to the air conditioning equipment. Mrs. Wonnacott again called General Refrigeration and repairmen were sent to the Alton store to undertake the repairs. Shortly after the repairmen began their work it came to the attention of General Refrigeration that there was some dispute as to whether or not Mrs. Wonnacott had been authorized to have the repairs made. As soon as General Refrigeration became aware of this the repairmen were ordered to cease their work, which they did immediately. This cause of action concerns only the work done by General Refrigeration prior to the second flood.

At the outset we should point out that defendant Seidel Company has not taken an appeal from the judgment of the lower court. Furthermore, we should point out that no counterclaims were pursued by any of the defendants in the court below. At the beginning of the trial, counsel for Seidel Company made an oral motion to file a "third-party action" against Goodwill Industries (by which motion we think he meant to file a counterclaim; see Ill. Rev. Stat., ch. 110, §§ 25 and 38). At any rate, the motion was denied, so that the plaintiff's claim was the only one involved at trial.

Furthermore, although the record shows that there was some dispute over whose duty it was to pay for the repair of the heating unit under the lease, the lease was not admitted into evidence and does not appear

in the record. It is not clear upon what theory the trial court found against defendant Seidel Company without ever having considered the lease entered into by Seidel Company and Goodwill Industries. Seidel Company sought to have the lease admitted into evidence, but its request was denied. Nevertheless, Seidel Company, the only defendant which had a judgment for damages rendered against it in the trial court, has not appealed, and neither party involved in this appeal discusses the effect of not having the lease in evidence.

Irrespective of any lease considerations, plaintiff contends that Goodwill Industries should be bound either because Mrs. Wonnacott was an agent acting with apparent authority to bind Goodwill Industries or because Goodwill Industries acted as the agent of an undisclosed principal (Seidel Company). Pointing out once again that we are not herein dealing with liabilities under the lease, we feel that General Refrigeration is not entitled to judgment against Goodwill Industries on the basis of the issues brought before this court.

Plaintiff first contends that Mrs. Wonnacott was clothed with apparent authority to bind Goodwill Industries for the services rendered by plaintiff either because she was the general agent of Goodwill Industries, or because of an established course of dealing between the parties.

> "The theory of apparent authority rests on two premises: a manifestation by the principal to a third party, and belief by that third party that the extent of the authority granted to the agent encompasses the contemplated activity. (Restatement (Second) Of Agency (1958) sec. 8.)" *Simpson v. Compagnie Nationale Air France*, 42 Ill.2d 496, 500, 248 N.E.2d 117, 120.
>
> "[A]pparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." Restatement (Second) Agency § 27 (1958).

Plaintiff asserts that Mrs. Wonnacott, as manager of the Alton Goodwill store, was the general agent of Goodwill Industries and, as such, had apparent authority to bind Goodwill Industries. Plaintiff cites *Hodges v. Bankers Surety Co.*, 152 Ill.App. 372. However, the evidence clearly shows that plaintiff did not in fact believe that Mrs. Wonnacott's authority, as manager of the Alton store, extended to repairs such as are herein involved. Mr. Thomas DeClew, vice-president of General Refrigeration, testified at the trial and made numerous references to the fact that he knew Mrs. Wonnacott did not have authority to authorize repairs which would require a substantial expenditure of money on

the part of Goodwill Industries. Some of these references are as follows:

"Except that I did have our people to call and tell them it was going to run quite a bit of money and they better get the okay from the St. Louis office.

\* \* \*

Our dealing was with the Goodwill people on Third Street [the Alton store]. I told our people to tell her it was up to her to get the okay from whoever, whether it was the main office in St. Louis or who.

\* \* \*

I knew this lady was just the manager and I didn't want any confusion and I wanted her to realize this.

\* \* \*

I knew she had to deal with the St. Louis office and I instructed my people to tell her it would be quite expensive and then I don't know who she called.

\* \* \*

Q. You did recognize the fact somebody beyond her had some authority, because she didn't have it herself?

A. Correct."

Plaintiff further asserts that Mrs. Wonnacott had apparent authority to bind Goodwill Industries because of a previous course of dealing. Plaintiff's brief states:

"When Goodwill Industries held out Mrs. Wonnacott as the manager of the Alton store, and especially when Goodwill Industries *paid the invoices submitted* for similar work previously performed at the request of Mrs. Wonnacott, it clothed Mrs. Wonnacott with apparent authority to bind it for the services performed at her request in the Spring of 1973. Mrs. Wonnacott's apparent authority stemmed from Goodwill Industries' custom and previous course of dealing established *by honoring invoices* for similar work performed at the request of Mrs. Wonnacott." (Emphasis added.)

Although the testimony indicated that General Refrigeration had done work for Alton Goodwill store in the past at the request of Mrs. Wonnacott, and that General Refrigeration had sent bills for such work to Goodwill, there is nothing in evidence which shows that Goodwill Industries paid for these past services. Mrs. Wonnacott stated that she had no knowledge of who had paid the bills; Mr. DeClew was not sure who had paid the bills. No record of any kind of past payments by Goodwill Industries was introduced. This would seem to be a crucial

factor in determining the existence of a course of dealing by which Goodwill Industries might be bound. It is just as conceivable that the Seidel Company, the owner of the building, had paid the bills as it is that the Goodwill Industries had paid them. The court is certainly under no duty to find a course of dealing by guessing as to what has occurred between the parties in the past.

Furthermore, the testimony of Mr. DeClew indicates that the repairs made to the heating unit of the Goodwill store during the spring of 1973 were not the ordinary maintenance type of repairs previously performed at the store by General Refrigeration.

> "Q. Mr. DeClew, you previously billed Goodwill for some other services there.
>
> A. Yes sir.
>
> Q. What type of services were those?
>
> A. Repairs for heating and air conditioning.
>
> Q. Keeping it going?
>
> A. Yes.
>
> \* \* \*
>
> Q. Mr. DeClew if I get this correctly, before you did the major work on this $610.00 bill you called and relayed the information that the parts would be expensive?
>
> A. Yes, that's the only reason I instructed our people to do it. I knew this lady was just the manager and I didn't want any confusion and I wanted her to realize this."

With General Refrigeration thus knowing that Mrs. Wonnacott's authority was limited, the question becomes whether General Refrigeration could conclude that Mrs. Wonnacott was acting within the scope of her authority in requesting the services. The general rule which applies in determining whether an agent is acting with apparent authority has been well stated as follows:

> "Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume or which he holds his agent out as possessing—it is such authority as a reasonably prudent man, exercising diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess." *Wing v. Lederer*, 77 Ill.App.2d 413, 417, 222 N.E.2d 535, 537-38. "Apparent authority in an agent to do an act for his principal must be based on the words and acts of his principal and cannot be based on anything the agent himself has said or done." *Lawcock v. United States Trotting Association*, 55 Ill.App.2d 211, 217, 204 N.E.2d 802, 805.

The duty one has when dealing with an agent with apparent authority is set out in 3 Am. Jur. 2d *Agency* § 78 (1962) (applied in *Lawcock v. United States Trotting Association,*):

> "A third person dealing with a known agent may not act negligently with regard to the extent of the agent's authority or blindly trust the agent's statements in such respect. Rather, he must use reasonable diligence and prudence to ascertain whether the agent is acting and dealing with him within the scope of his powers. The mere opinion of an agent as to the extent of his powers, or his mere assumption of authority without foundation, will not bind the principal; and a third person dealing with a known agent must bear the burden of determining for himself, by the exercise of reasonable diligence and prudence, the existence or nonexistence of the agent's authority to act in the premises. The principal, on the other hand, may act on the presumption that third persons dealing with his agent will not be negligent in failing to ascertain the extent of his authority as well as the existence of his agency."

Substantially the same rule is set out in 2A C.J.S. *Agency* § 162, at 801-02 (1972). Although we do not find it necessary to also quote that entire section here, one sentence which appears at page 802 is particularly worth mentioning.

> "If [the third person] knows, or has good reason for believing, that the acts exceed the agent's powers or if such reasonable inquiry as he is under the duty to make, would result in a discovery of the true state of the powers, and he fails to fulfill that duty, he cannot assert an apparent authority effective against the principal."

The record in the instant case, particularly the testimony of Mrs. Wonnacott and of Mr. DeClew, clearly shows that General Refrigeration made no efforts to determine whether Mrs. Wonnacott was acting within the scope of her authority as an agent of Goodwill Industries. Instead General Refrigeration relied exclusively on the statements of Mrs. Wonnacott that she had authority to order the repairs even though Mrs. Wonnacott at no time stated that Goodwill Industries had given her authority. The relevant portions of Mr. DeClew's testimony are as follows:

> "Q. You don't know where the actual authority came from for the job?
>
> A. Unless we got it from Mrs. Wonnacott.
>
> \* \* \*
>
> I told our people to tell her *it was up to her to get the okay* from whoever, whether it was the main office in St. Louis or who.

* * *

I knew she had to deal with the St. Louis office and I instructed my people to tell her it would be quite expensive and *then I don't know who she called.*

Q. You don't know from whom she got authority?

A. Right." (Emphasis added.)

After General Refrigeration had instructed Mrs. Wonnacott to obtain the authority to order the repairs, Mrs. Wonnacott contacted Mr. Robert French, the assistant executive vice-president of Goodwill Industries. Mr. French advised Mrs. Wonnacott that Goodwill Industries had no duty under the lease to provide for the repairs needed; he advised her to contact Mr. Seidel, the president of the Seidel Company, because, according to Mr. French's interpretation of the lease, Seidel Company had the duty to provide for the repairs. Mrs. Wonnacott then contacted Mr. Seidel and, according to her testimony, Mr. Seidel stated that she should go ahead and have the work done and that he and Mr. French would determine who would pay the bill later. Mrs. Wonnacott stated that Mr. Seidel had not said, however, that the Seidel Company would be responsible for payment for the repairs. According to Mr. Seidel's testimony, he did not tell Mrs. Wonnacott to go ahead and have the repairs done or that he and Mr. French would later determine who should pay the bill; he only advised her to refer to the lease, since the Seidel Company had no duty to make repairs.

At any rate, however, Mrs. Wonnacott thereafter recontacted General Refrigeration and told them to proceed with the work. The relevant portions of her testimony are as follows:

"A. I told him I was manager of the Goodwill Store of Alton, and I had authority they were to come out and fix it.

* * *

A. I called General Refrigeration and told whoever answered the telephone I had received authority from Mr. Seidel to go ahead and do the work.

* * *

Q. You testified you did not tell the refrigeration company these repairs were to be at the expense of Goodwill?

A. Correct.

Q. Did you tell the Refrigeration Company these repairs were to be at the expense of Seidel Company, Inc.?

A. I told them I had permission from Mr. Seidel for them to do the work.

Q. Either you did or did not, did you or did you not tell General Refrigeration these repairs were to be at the expense of Seidel Company?

A. Not in that way no. I told them I had permission from Mr. Seidel for them to do the work.

\* \* \*

Q. Did you explain who Mr. Seidel was?

A. I don't remember. There's too many conversations. He was the owner of the building. There was no reason to tell them."

■■ General Refrigeration knew that Mrs. Wonnacott did not have authority on her own to order repairs of the type herein involved. A reasonable inquiry by General Refrigeration would have disclosed the true state of Mrs. Wonnacott's powers. However, instead of calling the St. Louis office of Goodwill Industries' or making some other effort to determine whether Goodwill Industries would accept responsibility for payment, General Refrigeration relied totally on the statement of Mrs. Wonnacott that she had authority. Under these circumstances we do not feel that General Refrigeration exercised reasonable diligence and prudence in determining the extent of Mrs. Wonnacott's apparent authority. Goodwill Industries cannot, therefore, be held to have been bound merely on the basis of apparent authority of its agent.

Plaintiff's final contention is that Goodwill Industries is liable as the agent of an undisclosed principal, namely Seidel Company. This contention is without merit. There is no evidence indicating that Goodwill Industries had any contact with either Seidel Company or General Refrigeration regarding these repairs. By plaintiff's own admissions all of its dealings were with Mrs. Wonnacott. If anyone could be held liable on the theory that there was an undisclosed principal, it would have to be Mrs. Wonnacott, not Goodwill Industries.

■■ Moreover, even assuming, *arguendo*, that Goodwill Industries did act as an agent of an undisclosed principal, Goodwill cannot be held liable under such a theory. Although either the agent or the undisclosed principal may be liable, and although the third party may seek recovery from both, there is no joint liability between them. The third party must elect from whom he is to take judgment. (*Vander Wagen Bros., Inc. v. C. J. Barnes*, 15 Ill.App.3d 550, 304 N.E.2d 663; *Johnson v. Fischer*, 108 Ill.App.2d 433, 247 N.E.2d 805.) General Refrigeration has not disclaimed the judgment against Seidel Company or sought to have that judgment vacated either before the trial court or this court. In fact plaintiff's brief, by stating that plaintiff does not wish to disturb the trial court's finding of fact upon which plaintiff asserts the judgment Seidel Company rests, indicated plaintiff's desire to keep the judgment against Seidel Company. Thus we feel plaintiff, General Refrigeration, has elected to take judgment against Seidel Company and cannot now seek

to have Goodwill Industries held liable under an undisclosed-principal theory.

For the foregoing reasons, the judgment against General Refrigeration with respect to Goodwill Industries is hereby affirmed.

EBERSPACHER and G. MORAN, JJ., concur.