LINCOLN CARDINAL PARTNERS, Plaintiff-Appellant, v. STEVEN W. BARRICK, Defendant (Interstate Laundries, Inc., Defendant-Appellee).

Fourth District   No. 4—91—0091

Opinion filed September 6, 1991.

Valerie Moehle Umholtz, of Moehle, Swearingen & Associates, Ltd., of Pekin, for appellant.

Joseph A. Duesterhaus, of Scholz, Staff & Palmer, of Quincy, for appellee.

JUSTICE GREEN delivered the opinion of the court:

We hold here that a purported agent's otherwise apparent authority to contractually bind a principal to a third party is destroyed when a showing is made requiring the third party to recognize that a conflict of interest exists between the purported agent and the principal. We do not hold that a mere showing that a purported agent has a personal interest in a contract, without a showing the interest conflicts with that of a principal, negates a determination that the purported agent has apparent authority.

On May 30, 1990, plaintiff Lincoln Cardinal Partners, an Illinois partnership, filed a complaint in forcible entry and detainer (Ill. Rev. Stat. 1989, ch. 110, par. 9—101 *et seq.*) in the circuit court of Adams County against defendants Steven W. Barrick and Interstate Laun-

dries, Inc. (Interstate). Count I was directed against Steven W. Barrick and count II was against Interstate. The counts alleged defendants were withholding possession of two laundry rooms, in a housing complex owned by plaintiff, after the expiration of a lease as to those premises. Plaintiff obtained a default judgment for possession against Steven W. Barrick on August 14, 1990. After a bench trial, the circuit court entered a judgment in favor of Interstate on January 8, 1991. Plaintiff has appealed. We reverse and remand.

Interstate maintains a right to possession of the laundry rooms through documents purporting to be 10-year leases to the rooms beginning January 1, 1989. The documents were signed on behalf of plaintiff by Steven W. Barrick purporting to act on behalf of Barrick, Inc. (Barrick), as agent for plaintiff. Under the evidence, Barrick actually had no authority to obligate plaintiff on any such lease. The only issue of substance in the trial court was whether Barrick had apparent authority to bind plaintiff in that way. Here, the issue is whether the circuit court's determination, inherent in its judgment, that Barrick had apparent authority is wrong as a matter of law. We conclude it was.

Most of the pertinent facts are undisputed. At all times involved, plaintiff owned the complexes, but because of a subsidy received, management contracts were required to be approved by the Illinois Housing Development Authority (IHDA). From July 1, 1982, until sometime in 1988, written contracts were in force between plaintiff and Barrick, and approved by IHDA, for the management of the complexes. On May 2, 1988, a similar written contract for those services, extending until September 30, 1989, was signed by plaintiff and Barrick but was never approved by IHDA. According to the terms of all of those documents, the property manager had authority to lease residential units without approval by plaintiff, but plaintiff's approval was required for commercial leases such as those for laundry rooms.

Each apartment complex has a laundry room for tenants' use. On March 1, 1983, Barrick, Ltd., as agent for plaintiff, entered into two laundry-room leases for the two laundry rooms in the complexes, with the firm of Nagel and Nagel. Each lease was for a term of seven years, provided that the lessee would furnish the laundry machines, and that the lessor and lessee would share the monthly cash receipts on a 50-50 basis. After several assignments, the leases were ultimately assigned to Steven W. Barrick individually on December 22, 1988. Since December 3, 1986, plaintiff knew that the leases were assigned to Steven W. Barrick, but did not seek to terminate the leases

or remove Barrick as property manager. Plaintiff does not contest those leases or their subsequent assignments.

In December 1988, approximately 1½ years before the leases expired, Steven W. Barrick negotiated an agreement with Interstate. This agreement had three components: first, on behalf of Barrick as agent for plaintiff, Steven W. Barrick signed two new 10-year leases with Interstate for the laundry rooms, commencing January 1, 1989; second, acting personally, Steven W. Barrick assigned his interest in the existing laundry leases to Interstate; and third, Steven W. Barrick executed a bill of sale to Interstate for nine washers and nine dryers that he owned. They were then installed in the two laundry rooms. Interstate paid Barrick personally $9,000 for the remaining interest in the 1983 leases and for the washers and dryers. Steven W. Barrick added an addendum giving himself an option to buy back the 1983 leases and equipment for a prorated share of the $9,000 sale price. Barrick did not inform plaintiff of the new 10-year leases until the fall of 1989 when plaintiff then notified Interstate to vacate those laundry rooms.

■ Instead of plaintiff furnishing a transcript of the evidence, the parties have agreed to a report setting forth the evidence. The report shows that Ralph Hinkle, marketing agent for Interstate, and Eric Ryberg, its vice-president, both testified that the custom and practice in the industry was for the property manager to have authority to execute laundry-room leases without approval of the owner of the complex. Barrick did not have actual authority to bind plaintiff to a laundry lease because (1) its management contract had not been approved by IHDA, and (2) the express terms of the management contract limited Barrick's authority to execute leases to those concerning apartments. However, by permitting Barrick to execute leases to apartments in premises under circumstances where a practice exists of such agents having authority also to make laundry leases, plaintiff could be forced to be bound by the authority which Barrick appeared to have. (*Simpson v. Compagnie Nationale Air France* (1969), 42 Ill. 2d 496, 248 N.E.2d 117; Restatement (Second) of Agency §8 (1958).) The determination of whether an agent had apparent authority is usually a question of fact. (*General Refrigeration & Plumbing Co. v. Goodwill Industries* (1975), 30 Ill. App. 3d 1081, 333 N.E.2d 607.) If the evidence were limited to that which we have previously mentioned, a trier of fact could properly have found, as did the circuit court here, that Barrick had apparent authority to bind plaintiff to the 10-year leases.

However, an additional factor was established by the evidence set forth in the agreed report. Hinkle testified he asked Steven W. Barrick if he had authority to sign the new lease on behalf of plaintiff, and Steven W. Barrick stated that he did. Hinkle further stated he had no reason to believe otherwise. On cross-examination, Hinkle stated he believed the assignment of the old leases and the equipment purchased from Steven W. Barrick was not worth the $9,000 Interstate was paying for it and that the transaction whereby Interstate acquired that assignment and equipment was worthwhile only because Interstate was also acquiring the 10-year leases. Thus, Hinkle was aware that Steven W. Barrick was engaging in a transaction on behalf of a principal under circumstances where a direct conflict of interest was involved. This was so because Interstate was willing to pay a certain amount for a package of lease and purchase rights, and the principal and the agent had a direct conflict of interest as to the allocation between them of the total proceeds. Hinkle was also aware that the division of those proceeds appeared to be unfair.

We agree with plaintiff that the information possessed by Hinkle, Interstate's agent, put a duty on Interstate to make further investigation of the authority of Barrick before Interstate could assume that Barrick had authority to bind plaintiff to the 10-year leases. Plaintiff points out that in *Beaton & Associates, Ltd. v. Joslyn Manufacturing & Supply Co.* (1987), 159 Ill. App. 3d 834, 512 N.E.2d 1286, an agent was held to be guilty of civil fraud when, while representing a manufacturer for a fee in maintaining and organizing a strike security force, the agent, without knowledge of the manufacturer, also accepted a fee from an entity supplying the security force. Here, the conduct of Steven W. Barrick, known to Hinkle, was somewhat similar to the *Beaton* agent. Steven W. Barrick was acting for himself in obtaining what appeared to be more than his fair share of the proceeds of a package transaction which also included the leasing by Barrick of the principal's property. See also *Marden v. Southard* (1912), 175 Ill. App. 590.

No decision of an Illinois court of review called to our attention passes upon the question of how notice to a third party of impropriety on the part of a person or entity otherwise appearing to be an agent bears upon the authority of the purported agent to bind its principal. Reputable texts indicate notice of such impropriety negates the appearance of authority. One text states:

**"Persons Having Notice of Limitations of Agent's Authority**

**A person with notice of a limitation of an agent's authority cannot subject the principal to liability upon a transaction**

with the agent if he should know that the agent is acting improperly. Comment:
\* \* \*

*b.* As stated in Section 39, it is inferred that an agent has authority to act only for the principal's benefit. If, therefore, the third person has reason to believe that the agent is acting for his own benefit, he cannot subject the principal to liability upon a contract which in fact is unauthorized.

*c.* Where circumstances indicate that the agent may be acting in fraud of the principal, a person dealing with the agent is required to exercise care in investigation in order to hold the principal liable. See Comments *c* and *d* on §165." Restatement (Second) of Agency §166, at 392-93 (1958).

Another text states:

**"Agent acting adversely to principal's interests**

A person who undertakes to act as agent for another cannot be permitted to deal in the agency matter on his own account and for his own benefit without the consent of principal, freely given with full knowledge of every detail known to the agent which might affect the transaction. An agent cannot bind his principal in a matter in which his own interest conflicts with his duty as an agent and his endeavor to do so operates as an immediate revocation of his authority. This is a rule of law of which all persons must take notice. *Whenever it appears that the interests of an agent and those of his principal are necessarily in opposition in a particular transaction, strangers dealing with the agent are charged with notice of his want of authority to bind the principal by his acts.* In perverting his powers to his own personal ends and purposes, an agent acts in excess of his authority, and persons who knowingly participate in such act of perversion, as by purchasing the principal's property with knowledge that the agent intends to convert the proceeds to his own use, are not protected by the authority conferred on the agent." (Emphasis added.) 3 Am. Jur. 2d *Agency* §88, at 599 (1986).

In *Consumers Credit Corp. v. Swilley* (1962), 243 Miss. 838, 138 So. 2d 885, the owners of a small finance company gave plaintiff a written guarantee of payment upon all paper assigned by their company to plaintiff. The defendant owned 90% of the small finance company. The other owner gave his personal note to plaintiff and endorsed upon the note a purported guarantee of the small finance company by himself as agent. The *Consumers Credit* court affirmed a

trial court judgment dismissing the plaintiff's complaint against the 90% owner. The *Consumers Credit* court stated: " 'Whenever it appears that the interests of an agent and those of his principal are necessarily in opposition in a particular transaction, strangers dealing with the agent are charged with notice of his want of authority \*\*\*.' " *Consumers Credit*, 243 Miss. at 846, 138 So. 2d at 888, quoting 2 Am. Jur. *Agency* §98, at 80 (1936).

In *Central West Casualty Co. v. Stewart* (1933), 248 Ky. 137, 58 S.W.2d 366, a duly authorized agent for a bonding company, without paying premium or giving notice to his principal, wrote a bond payable to his landlord to secure his rent. In a suit on the bond upon the purported agent's default on rent, the reviewing court held the surety was not liable on the bond, because the conflict between the purported agent and the bonding company which was surety on the bond was obvious to the landlord and negated the apparent authority the agent would otherwise have had.

■ As we have indicated here, Hinkle was well aware that Steven W. Barrick not only had an interest in the total contract which Steven W. Barrick was negotiating with Interstate, but also the structure of the contract was such that Steven W. Barrick had a conflict of interest with plaintiff in apportioning the proceeds to be paid by Interstate at time of closing and later for rent. The cited authority would tend to indicate this conflict of itself was enough to negate other indications Barrick had authority to negotiate the 10-year leases, thus requiring a ruling in favor of plaintiff as a matter of law. Over and above the mere indications of conflict of interest which were apparent to Hinkle here, he also had good reason to believe that, by the way Steven W. Barrick structured the agreement, he was violating his fiduciary duty and that of Barrick, his firm, to plaintiff. This undisputed evidence required a ruling in favor of plaintiff as a matter of law.

The trial court concluded the contract which included the 10-year leases was not commercially unreasonable. While that might eventually be determined to be true, that was not the determinative issue. Rather, the key question was whether Interstate should have been aware a conflict of interest existed between plaintiff and its purported agent.

Interstate complains that the issue of "fraud" is being raised improperly for the first time on appeal. We are not holding that any fraud occurred. We are holding that notice of the likelihood of a conflict of interest between Barrick and plaintiff impaired other appearances that Barrick had authority to enter into the contract. The evi-

dence we have considered bears upon the issue of apparent authority which was raised by Interstate.

Accordingly, we reverse the judgment of the circuit court and remand to the circuit court with directions to issue a judgment in favor of plaintiff for possession, for any damages incurred, which shall be determined after hearing, and for such supplemental relief as to which plaintiff shall be entitled.

Reversed and remanded with directions.

` LUND, P.J., and STEIGMANN, J., concur.